Harry A. Safarian (SBN 204106)
THE SAFARIAN FIRM, APC
1000 N. Central Avenue, Suite 210
Glendale, California 91202
Tel: (818) 334-8528
Fax: (818) 334-8107

hs@safarianfirm.com

Attorneys for Defendant,
DIANE CAFFERATA
(erroneously sued and served as "DIANE CAFFERATA HUTNYAN")

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK HUTNYAN;<br><br>        Plaintiff,<br><br>    v.<br><br>DIANE CAFFERATA HUTNYAN; KRISTIAN HERZOG Also Known as KRIS HERZOG, Individually and Doing Business as THE BODYGUARD GROUP OF BEVERLY HILLS; COUNTY OF LOS ANGELES; RICK TYSON; EDDIE CARTER; GLENN VALVERDE; NICHOLAS JOHNSTON; GERMAINE MOORE; CITY OF MANHATTAN BEACH; RYAN SMALL; CHAD SWANSON; CHRIS NGUYEN; TERESA MANQUEROS,<br><br>        Defendants. | CASE NO. 2:17-cv-00545-PSG-ASx<br><br>Hon. Philip S. Gutierrez<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*CONCURRENTLY FILED WITH THE DECLARATION OF HARRY A. SAFARIAN AND REQUEST FOR JUDICIAL NOTICE*]<br><br>**Date:** June 5, 2017<br>**Time:** 1:30 p.m.<br>**Judge:** Hon. Philip S. Gutierrez<br>**Courtroom:** 6A (6th Floor)<br><br>Complaint Served: Feb. 7, 2017<br>Response Date: March 30, 2017 |

1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 5, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Philip S. Gutierrez in the United States District Court for the Central District of California, located at the First Street Courthouse, 350 West 1st Street, Courtroom 6A, 6th Floor, defendant Diane Cafferata (erroneously sued and served as "Diane Cafferata Hutnyan") will, and hereby does, move to dismiss the claims presented in plaintiff's complaint pursuant to Rule 12(b)(6) against Ms. Cafferata on the grounds plaintiff fails to state a claim (and cannot state a claim if leave to amend is permitted) on which relief may be granted.

This motion is based upon the arguments presented in the accompanying memorandum of points and authorities, the declaration of Harry A. Safarian, and request for judicial notice filed concurrently with this motion, and such other arguments as may be presented at the hearing.

**Meet and Confer Pursuant to Local Rule 7-3**: In advance of filing this motion, counsel for Ms. Cafferata provided a draft copy of this motion to plaintiff's attorneys, and met and conferred by email with both plaintiff's attorneys, and telephonically multiple times with plaintiff's counsel. The parties were unable to reach an agreement as to any of the issues address in this motion and, accordingly, the Court is asked to dismiss, with prejudice, the complaint as against Ms. Cafferata pursuant to the authorities and arguments set forth in the attached Memorandum of Points and Authorities.

THE SAFARIAN FIRM, APC

Dated: March 12, 2017          By /s/ Harry A. Safarian
                                        Harry A. Safarian
                                        Attorneys for Defendant,
                                        DIANE CAFFERATA

*MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)*

# **TABLE OF CONTENTS**

I.   Preliminary Statement……………………………………………………1

II.  Statement of Facts…………………………………………………………..2

III. The Complaint Fails to Set Forth the Required "Direct or Inferential Allegations" Necessary to Sustain Recovery Under Any of The Claims, And Every Claim Should Be Dismissed as Against Ms. Cafferata With Prejudice……………………………………...5

IV.  The Complaint Fails to State a Cause of Action for Violation of Section 1983 Because No State Action Is Alleged and Ms. Cafferata Is Not a State Actor……………………………………………7

V.   The Complaint Fails to State a Claim for Violation of Section 1983 Because It Does Not Identify Deprivation of Constitutional Rights or Laws of The United States……………………………………...10

VI.  The Complaint Fails to State a Cause of Action for Intentional Infliction Because Ms. Cafferata's Compliance with The MSA And Hiring of Private Security to Protect Her Was Not "Extreme and Outrageous."………………………………………….................13

    A. The Third and Fourth Causes of Action Fashioned "Intentional Infliction" And "Assault and Battery" Should Be Dismissed Because Ms. Cafferata Cannot Be Liable for The Unapproved *Alleged* Intentional Torts of Independent Agents…………...13

    B. The Third Cause of Action Should Be Dismissed Because the Complaint Fails to Set Forth Any Facts of "Intentional Infliction" By Ms. Cafferata…………………………………………...14

    C. The Fourth Claim For "Assault and Battery" Should Be Dismissed Because No Facts Are Alleged to Indicate Ms. Cafferata Made, Ratified, Or Authorized a Harmful or Offensive Touching………………………………………………15

VII. Conclusion...………………………………………………………16

i

# TABLE OF AUTHORITIES

## STATUTORY AUTHORITY

18 U.S.C. § 1983…………………………………………………………..1, 3-12

Civil Code 47(b)…………………………………………………………………10

## CASE AUTHORITY

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
    526 U. S. 40 (1999)……………………………………………………7

*Ashcroft v. Iqbal,*
    556 U. S. 662, 129 S. Ct. 1937 (2009)……………………………...6

*Austin B. v. Escondido Union School Dist.,*
    149 Cal.App.4th 860 (Cal. App. 4th Dist., 2007)……………………13

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007)…………………………………………………...6

*Casey v. United States Bank Nat. Assn.,*
    127 Cal.App.4th 1138 (Cal. App. 4th Dist., 2005)…………………...13

*Brunette v. Humane Society of Ventura County,*
    294 F.3d 1205 (9th Cir. 2002)………………………………………...7

*Carlsen v. Koivumaki,*
    227 Cal.App.4th 879 (Cal. App. 3d Dist., 2014)……………………15

*Collins v. Womancare,*
    878 F.2d 1145 (9th Cir. 1989)………………………………………...7, 8

*Ennis v. City of Daly City,*
    756 F. Supp. 2d 1170 (N.D. Cal. 2010)……………………………….7

*Fremont Comp. Ins. Co. v. Superior Court*
    44 Cal.App.4th 867 (Cal. App. 4th Dist., 1996)……………………….9

*MOTION TO DISMISS – FRCP 12(b)(6)*

*Hagberg v. California Federal Bank FSB*,
    32 Cal.4th 350 (2004)……………………………………………………9

*Hughes v. Pair*,
    46 Cal.4th 1035 (2009)…………………………………………………14

*Hunsucker v. Sunnyvale Hilton Inn*
    23 Cal.App.4th 1498 (Cal. App. 6th Dist., 1994)………………………...9

*Johnson v. Barker*,
    799 F.2d 1396 (9th Cir. 1986)…………………………………………10

*Ketchum v. Alameda County*,
    811 F.2d 1243 (9th Cir. 1987)……………………………………...7, 10, 11

*Long v. County of Los Angeles*,
    442 F.3d 1178 (9th Cir. 2006)…………………………………………...8

*Moss v. U.S. Secret Service*,
    572 F.3d 962 (9th Cir., 2009)……………………………………………6

*Passman v. Torkan*,
    34 Cal.App.4th 607 (Cal.App.4th Dist., 1995)………………………...9

*Price v. State of Hawaii*,
    939 F.2d 702 (9th Cir. 1991)……………………………………………7

*Rains v. Superior Court*,
    150 Cal.App.3d 933 (Cal. App. 2nd Dist., 1984)………………………16

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982)……………………………………………………...8

*Saunders v. Superior Court*,
    27 Cal.App.4th 832 (Cal. App. 2nd Dist., 1994)………………………13

*Student Loan Marketing Ass'n. v. Hanes*,
    181 F.R.D. 629 (S.D. Cal. 1998)………………………………………...5

*MOTION TO DISMISS – FRCP 12(b)(6)*

*Sutton v. Providence St. Joseph Med. Center,*
    192 F.3d 826 (9th Cir. 1999)…………………………………………….7, 8

*U. L. Fletcher v. Western Life Insurance Co.,*
    10 Cal.App.3d 376 (Cal. App. 4th Dist., 1989)……………………………...14

*Vincent v. Trend Western Technical Corp.,*
    828 F.2d 563 (9th Cir. 1987)………………………………………………….8

*West v. Atkins,*
    487 U.S. 42 (1988)………………………………………………………….7, 8

*Wright v. City of Ozark,*
    715 F.2d 1513 (11th Cir. 1983)……………………………………………...11

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PRELIMINARY STATEMENT.

There is no "right place" to propagate rancorous family law proceedings closed by a valid Judgment of Dissolution. The United States District Court is certainly not such a place.

This case is facially meritless and should be dismissed. After over 20 years of marriage, Mark Hutnyan and Diane Cafferata entered a signed and notarized Marital Settlement Agreement ("MSA"). The MSA was incorporated into a Judgment of Dissolution and is subject to judicial notice by this Court. The MSA gave Mr. Hutnyan sole possession of the former couple's Manhattan Beach home for one year. That possession expired on March 3, 2016. Plaintiff now contends Ms. Cafferata's attempt to exercise her absolute right under the MSA to return to her home on March 25, 2016—after Mr. Hutnyan's "sole possession" period—somehow deprived him of Constitutional rights.

Plaintiff advances facially meritless, wholly implausible claims for violation of 18 U.S.C. section 1983, intentional infliction of emotional distress, assault and battery. The complaint does not identify the requisite "state action" or Constitutional deprivation by Ms. Cafferata, who merely sought to go home with the assistance of *private* security for her own safety. Indeed, the complaint does not identify a single word spoken by Ms. Cafferata, and does not state that she made physical contact with plaintiff, or even looked in his direction, or that she authorized or ratified any conduct.

The claims against Ms. Cafferata are meritless. This lawsuit presents a unique paradigm justifying dismissal at the outset, without leave to amend. The Judgment of Dissolution officially closed the divorce proceedings.  This is not the place to re-open them.

*MOTION TO DISMISS – FRCP 12(b)(6)*

## II.

## STATEMENT OF FACTS.

Plaintiff sets forth a deliberately incomplete and demonstrably inaccurate factual narrative to perpetuate facially meritless claims against his former wife. The complaint hinges on the false narrative plaintiff had "exclusive" right to occupy a home he and Ms. Cafferata bought as husband and wife years prior to the alleged events at issue, stating:

> On or about March 25, 2016 and March 26, 2016 at plaintiff MARK HUTNYAN's residence, located at 224 32nd Street, Manhattan Beach, California ("the Home"), defendants, and each of them, unlawfully and forcefully entered the Home without any knocking, warning, or notice, in violation of plaintiff's civil rights…

Complaint, ¶ 26.

Plaintiff omits critical facts the Court should judicially notice: (1) plaintiff and Ms. Cafferata purchased the home together, (2) they entered the signed, notarized MSA with an "Effective Date" of March 3, 2015, and (3) the MSA became part of the family court Judgment of Dissolution, and states:

> Respondent [plaintiff Hutnyan] will occupy the marital residence as long as he wishes up to **one year** or some other length of time agreed to by the Parties, or until it is sold, whichever is earlier.

Request for Judicial Notice, Ex. "A" (See MSA attached to Judgment of Dissolution filed with the Los Angeles Superior Court at ¶¶ 4.1 and 4.2.)

Plaintiff does not allege an agreement was reached that would allow him sole possession for more than a year (and, in fact, no such agreement was ever entered). The MSA also stated Ms. Cafferata would have access to the home at any time during the first year (indeed, at any time) upon reasonable notice. *Id.* at ¶ 4.3.

2

Clearly, the so-called "sole possession" period expired by the time of the March 25 and 26, 2016 events at issue. Thus, Ms. Cafferata did nothing more than return to the home as the parties agreed under the MSA. Plaintiff's claims he "still maintained [ ] sole possession of the Home pursuant to the fully executed Marital Settlement Agreement" is misleading. (Complaint, ¶ 30.)

Plaintiff goes on to offer an implausible and factually naked narrative. Ms. Cafferata, an accomplished lawyer who, as confirmed by the terms of the MSA, provided for plaintiff for many years (and will continue to do so in the future under the MSA) "retained the services of defendants HERZOG, a retired police officer, and THE BODYGUARD GROUP to enter the Home with defendant [Cafferata] armed with weapons to harass, threaten, intimidate plaintiff…" Complaint, ¶ 30. The Complaint does not set forth facts that Ms. Cafferata (incorrectly referred to throughout the complaint at times as "Mrs. Hutnyan") gave any instruction, or ratified any conduct, consisting of harassment, making threats, or intimidation. Nor does it allege she did these things personally. Indeed, the complaint offers no facts that Ms. Cafferata so much as looked at plaintiff's direction, spoke to him, or made physical contact with him. Thus, plaintiff's claims are subject to a motion to dismiss because:

Civil Rights Claim: Plaintiffs states no facts that would make Ms. Cafferata a "state actor," or facts that could trigger a private right of action under section 1983. In a failed attempt to bring this action within the parameters of section 1983, plaintiff opines, "on information and belief," that "HERZOG's bodyguard business…retains and privately employs law enforcement officers *off duty*, including Los Angeles County Sheriff Deputies and other employees and agents of defendant COUNTY OF LOS ANGELES the…" (Complaint, ¶ 31.) The concession Herzog "***privately employs***" is key, confirming no state actors were involved.

Indeed, nowhere does the complaint state facts Ms. Cafferata hired or coordinated with any government employees concerning her return to her home as

3

1   authorized by the MSA.

2          Plaintiff further alleges that, on March 23, 2016, Herzog and the so-called

3   "COUNTY EMPLOYEES" that work for him informed the City of Manhattan

4   Beach Police Department of their intention to "enter the Home armed with weapons

5   and wearing body cameras." (Complaint, ¶¶ 34 - 37.) Even assuming this to be true,

6   there is no contention Ms. Cafferata directed or ratified these activities. Moreover,

7   as explained below, this type of communication with law enforcement is absolutely

8   privileged—a privilege supported by public policy designed to encourage

9   communication between private citizens and law enforcement.

10         Plaintiff further alleges that, on or about March 25, 2016, "HERZOG and the

11  COUNTY EMPLOYEES clad in tactical uniform gear and wearing body cameras,

12  and defendant [Cafferata]" entered the home with the assistance of a locksmith.

13  (Complaint, ¶ 38.) In an improper attempt to establish the state action essential to

14  advancing a section 1983 claim, plaintiff repeatedly and improperly uses the

15  terminology "COUNTY EMPLOYEES," but does not dispute the "COUNTY

16  EMPLOYEES" were working for a *private* business outside of their "day jobs."

17  (Complaint, ¶ 31.) Plaintiff's "information and belief" a ***private*** security company

18  Ms. Cafferata ***privately*** hired "***privately employs"*** off-duty police does not equal

19  state action.

20         Clearly, there was no state action and, therefore, the complaint fails to state a

21  claim against Ms. Cafferata under section 1983. The claim should be dismissed.

22         <u>Common Law Intentional Tort Claims</u>: Likewise, the complaint is entirely

23  devoid of facts to support the narrative Ms. Cafferata intentionally inflicted

24  emotional distress upon, assaulted or battered, plaintiff.  There is no contention Ms.

25  Cafferata made physical contact with plaintiff—or that she even looked at him, or

26  spoke to him. In very loose terms, plaintiff contends he was "disturbed" or

27  "harassed." But, a close reading confirms the private security personnel who

28  assisted Ms. Cafferata into the jointly-owned home merely: (1) provided notice to

4

law enforcement of their planned entry into the home as authorized by the MSA (Complaint, ¶¶ 34-37), (2) in spite of having notice of this entry, plaintiff refused access, (3) plaintiff necessitated the services of a locksmith by his refusal to allow Ms. Cafferata into her own home, which she was absolutely entitled to pursuant to the MSA, which is subject to judicial notice (Complaint, ¶ 39), (4) plaintiff was asked to move his cars so that Ms. Cafferata "could gain access with her own vehicle(s)." (Complaint, ¶ 41.)

In entirely conclusory terms, plaintiff contends, "following this invasion and as a result of the harassment, threats and intimidation by defendants, plaintiff…was forced to, and did leave his Home that evening out of fear, worry, anxiety…." (Complaint, ¶ 45.) Again, plaintiff falsely insinuates it was only "his Home," ignoring the judicially noticeable MSA/Judgment confirming it was also Ms. Cafferata's home.

While plaintiff contends he was "struck about his body," (Complaint, ¶ 71), he provides no specific facts as to who struck him, or the circumstances of this occurring. And, it is utterly implausible defendants would notify local law enforcement of their planned entry and then enter the property through off-duty police and physically batter plaintiff while wearing body cameras (the footage from which will confirm no contact of any type was ever made with plaintiff's person).

## III.

## THE COMPLAINT FAILS TO SET FORTH THE REQUIRED "DIRECT OR INFERENTIAL ALLEGATIONS" NECESSARY TO SUSTAIN RECOVERY UNDER ANY OF THE CLAIMS, AND EVERY CLAIM SHOULD BE DISMISSED AS AGAINST MS. CAFFERATA WITH PREJUDICE.

A court will dismiss any claim that "fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n. v. Hanes,* 181 F.R.D. 629, 634 (S.D. Cal. 1998). "[A] complaint... must contain either direct or inferential

5

allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atlantic Twombly,* 550 U.S. 544, 562 (2007).

In *Ashcroft v. Iqbal,* 556 U. S. 662, 129 S.Ct. 1937, 1949 (2009), the Supreme Court held: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." The Supreme Court stressed, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... The plausibility standard…asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In this regard, the Ninth Circuit holds: "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir., 2009).

The section 1983 claim fails state a claim upon which relief to be granted because it is devoid of facts showing Ms. Cafferata (1) was a state actor, (2) denied plaintiff "The right…to be secure in [his] person[], house[]", papers, and affects, against unreasonable searches," (indeed, the property was not "his Home"), or (3) denied plaintiff due process.

On the contrary, as the MSA confirms, ownership of the home was resolved pursuant to the settlement agreement, which ultimately became the judicially noticeable Judgment of Dissolution. Ms. Cafferata did nothing more than go home with *private* security personnel to ensure her safety.

Likewise, the assault/battery and intentional infliction claims are also subject to a motion to dismiss. There is no contention Ms. Cafferata made physical contact with plaintiff, or that she ratified such contact—or that she even looked at, or spoke to, plaintiff.  The allegations, made largely of "information and belief" recitations and conclusions, simply do not set forth facts required to underpin claims of "extreme and outrageous" intentional conduct by Ms. Cafferata done with the

6

*MOTION TO DISMISS – FRCP 12(b)(6)*

probability of causing severe emotional distress. The complaint, consisting of layers of implausible fantasy at odds with judicially noticeable documentation, devoid of any facts Ms. Cafferata did anything to bring harm to plaintiff, should be dismissed.

## IV.

## THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR VIOLATION OF SECTION 1983 BECAUSE NO STATE ACTION IS ALLEGED AND MS. CAFFERATA IS NOT A STATE ACTOR.

"A § 1983 claim requires two essential elements: (1) the conduct that harms the plaintiff must be committed under color of state law (i.e., state action), and (2) the conduct must deprive the plaintiff of a constitutional right." *Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987); *West v. Atkins,* 487 U.S. 42, 48-49 (1988); *Ennis v. City of Daly City*, 756 F. Supp. 2d 1170, 1173 (N.D. Cal. 2010). A private party only acts under color of state law if he or she is "jointly engaged with state officials." *See Id*. at 1174. To be liable under this theory, the private party's actions must be "'inextricably intertwined' with those of the government." *Id*. (quoting *Brunette v. Humane Society of Ventura County*, 294 F.3d 1205, 1211 (9th Cir. 2002).) Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrong." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 119 (1999) (citation and internal quotation marks omitted). Separate and apart from the "color of state law" requirement, a section 1983 plaintiff also must show that the harm in question *resulted from* state action. *See Collins*, supra, 878 F.2d at 1147-48 (explaining state action requirement).

With few exceptions, private parties are not subject to suit under Section 1983. *Sutton v. Providence St. Joseph Med. Center,* 192 F.3d 826, 835 (9th Cir. 1999). "When addressing whether a private party acted under color of law, we therefore start with the presumption that private conduct does not constitute governmental action." *See,* also, *Price v. State of Hawaii,* 939 F.2d 702, 707-08 (9th

7

Cir. 1991) ("[P]rivate parties are not generally acting under color of state law."). The traditional definition of acting under color of state law requires that the defendant in a section 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West, supra,* 487 U.S. at pp. 48-49.

Because courts begin with the presumption a private party is not a state actor, plaintiff must set forth facts establishing Ms. Cafferata was more than a mere private party. *Sutton, supra,* 192 F.3d at p., 835. A plaintiff cannot meet this burden by pleading the "mere existence of a contract with the state" (which did not exist here). See e.g. *Rendell-Baker v. Kohn,* 457 U.S. 830, 840-841(1982). In *Rendell* the Ninth Circuit held schools do not become state actors "by reason of their significant or even total engagement in performing public contracts." See also, *Vincent v. Trend Western Technical Corp.,* 828 F.2d 563, 569 (9th Cir. 1987) (finding no state action where defendant "may have been dependent economically on its contract with the Air Force"); *See Collins*, supra, 878 F.2d at 1154 ("Joint action ... requires a substantial degree of cooperative action.").

Furthermore, to prove a violation of 42 U.S.C. § 1983, plaintiff must demonstrate Ms. Cafferata deprived him of a right secured by the United States Constitution or a federal statute and that, in doing, so the Ms. Cafferata acted under color of state law. *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)).

As established, the complaint clearly fails to establish Ms. Cafferata jointly engaged with state officials in depriving plaintiff of any alleged Constitutional rights. Rather, plaintiff offers the incomplete (and demonstrably inaccurate) factual narrative Ms. Cafferata engaged law enforcement to wrongfully enter "his" home. As the judicially noticeable MSA/Judgment confirms, commencing March 3, 2015—weeks before the events at issue in this case—Ms. Cafferata had the right to full and equal access to the home, and merely attempted to enter her home by a

8

private retained security company that, plaintiff admits, "privately employs" off-duty law enforcement.

Thus, there was no Constitutional deprivation. Even ignoring Ms. Cafferata's absolute legal right to return to the jointly-owned home, plaintiff cannot state Ms. Cafferata was acting "under color state law." The complaint merely alleges she hired a *private* bodyguard service (and for good reason, as this Court will hopefully not have occasion to learn in later proceedings). There is no contention Ms. Cafferata directed any government employees, or engaged them.

It is unclear if plaintiff contends state action exists by virtue of defendant Herzog's notifying the City of Manhattan Beach Police Department of the planned entry, or in referring to plaintiff as a "suspect" who is often "inebriated." If this is the case, the theory should be summarily rejected. Reports of this type to law enforcement (as established in the concurrently-filed anti-SLAPP motion) are absolutely protected, and for good reason. Otherwise, private citizens might be discouraged from communicating important facts to law enforcement. The following cases are instructive:

- *Hunsucker v. Sunnyvale Hilton Inn* (1994) 23 Cal.App.4th 1498, 1502: Motel owner's report to police that woman with gun was seen in plaintiff's room was absolutely privileged.

- *Passman v. Torkan* (1995) 34 Cal.App.4th 607, 616: Communications designed to prompt criminal prosecution directed to official governmental agency empowered to commence criminal prosecutions are absolutely privileged.

- *Fremont Comp. Ins. Co. v. Superior Court* (1996) 44 Cal.App.4th 867, 875: Defendant insurers were absolutely privileged to report plaintiff's overbilling to Insurance Department and local district attorney's office.

- *Hagberg v. California Federal Bank FSB* (2004) 32 Cal.4th 350: A customer filed suit against defendant bank for *falsely* reporting to police

9

1    that she had attempted to cash an invalid check, alleging a number of tort

2    causes of action. The Supreme Court affirmed summary judgment for

3    defendant, concluding the report was absolutely privileged, stating:

4         [W]e agree with the trial court, the Court of Appeal, and

5         the great weight of authority in this state" that these

6         statements are privileged under Civil Code 47(b) and can

7         be the basis for tort liability only if the plaintiff can

8         establish the elements of the tort of malicious prosecution.

9    *Id.* at 355.

10        Because plaintiff cannot plausibly allege state action and fails to allege any

11   defendant acted under color of state law or deprived him of a federally protected

12   right, he may not pursue a claim under 42 U.S.C. § 1983.

13

14                                 **V.**

15   **THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF**

16   **SECTION 1983 BECAUSE IT DOES NOT IDENTIFY DEPRIVATION OF**

17   **CONSTITUTIONAL RIGHTS OR LAWS OF THE UNITED STATES.**

18        "The second element of a § 1983 action is that the defendant's conduct must

19   deprive the plaintiff of rights "secured by the Constitution and laws" of the United

20   States. *Ketchum*, supra, 1247, citing 42 U.S.C. § 1983 (1982) and *also Johnson v.*

21   *Barker,* 799 F.2d 1396, 1399 (9th Cir. 1986). The *Ketchum* court observed:

22        The prevailing rule in the circuits is that citizens have no

23        constitutional right to be protected by the state from attack

24        by private third parties, absent some special relationship

25        between the state and the victim or the criminal and the

26        victim that distinguishes the victim from the general

27        public. *See, e.g., Escamilla v. Santa Ana,* 796 F.2d 266,

28        270 (9th Cir.1986); *Estate of Gilmore v. Buckley,* 787 F.2d

10

714, 719 (1st Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986); *Janan v. Trammell,* 785 F.2d 557, 560 (6th Cir.1986); *Jones v. Phyfer,* 761 F.2d 642, 646 (11th Cir. 1985); *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1984); *Fox v. Custis,* 712 F.2d 84, 87-88 (4th Cir. 1983); *Humann v. Wilson,* 696 F.2d 783, 784 (10th Cir. 1983).

*Ketchum,* supra, 1247.

The *Ketchum* court further explained:

> In defining this "special relationship," courts have considered whether there is a custodial relationship created or assumed by the state, whether the state is aware of a specific risk of harm to the plaintiff, *see, e.g., Fox,* 712 F.2d at 88, or whether the state has affirmatively placed the plaintiff in a position of danger, *see, e.g., Estate of Gilmore,* 787 F.2d at 722. The guiding principle that emerges from the cases following *Martinez* is that generally, the due process clause of the Constitution does not protect a member of the public at large from the criminal acts of a third person, even if the state was remiss in allowing the third person to be in a position in which he might cause harm to a member of the public, at least in the absence of a special relationship between the victim and the criminal or between the victim and the state.

*Wright v. City of Ozark,* 715 F.2d 1513, 1515 (11th Cir. 1983).

There is no dispute Ms. Cafferata is a private lawyer, and plaintiff does not contend Herzog or his company are government actors. Instead, the complaint surmises, "on information and belief," that Herzog/his company

11

employed off-duty law enforcement. It is without question the so-called "COUNTY EMPLOYEES" were working in a private capacity, entirely separate from any government work, and no facts are alleged that Ms. Cafferata hired any government employees. To the contrary, plaintiff admits the off-duty offers were "privately employed." Moreover, there is no contention any governmental agency sanctioned, or otherwise approved (or disapproved) of the entry into the subject home—except that the family court expressly authorized entry by Ms. Cafferata at any time after March 3, 2016, which predates the events at issue. Thus, the complaint, in merely alleging conduct by "privately employed" persons acting as private citizens, fails to allege any Constitutional deprivation.

Moreover, there was no deprivation of Constitutional rights. As explained, Ms. Cafferata had full and equal rights to the home, and did nothing more than go home (which required the use of a locksmith when plaintiff violated the MSA by denying her entry into the jointly-owned home). There is no contention Ms. Cafferata made contact with plaintiff, or otherwise harmed him, or his property. Simply stated, the complaint does not—and cannot—identify any Constitutional deprivation.

The defects with the section 1983 claim are incurable based upon the facts within the four corners of the complaint, especially when taking into consideration the judicially noticeable MSA and Judgment. Thus, the Court should dismiss the cause of action without leave to amend.

12

# VI.

## THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR INTENTIONAL INFLICTION BECAUSE MS. CAFFERATA'S COMPLIANCE WITH THE MSA AND HIRING OF PRIVATE SECURITY TO PROTECT HER WAS NOT "EXTREME AND OUTRAGEOUS."

### A. The Third and Fourth Causes of Action Fashioned "Intentional Infliction" and "Assault and Battery" Should be Dismissed Because Ms. Cafferata Cannot Be Liable for the Unapproved *Alleged* Intentional Torts of Independent Agents.

"As a general rule, one owes no duty to control the conduct of another ...." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 879 (Cal. App. 4th 2007) (Internal citation omitted.)

Liability for aiding and abetting arises if the defendant: "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." S*aunders v. Superior Court*, 27 Cal.App.4th 832, 846 (1994). The plaintiff must show the defendant had actual knowledge of the specific primary wrong the defendant allegedly substantially assisted. *Casey v. United States Bank Nat. Assn*., 127 Cal.App.4th 1138, 1145 (Cal. App. 4th Dist., 2005). "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." [Citation.]

As established, the complaint merely alleges Ms. Cafferata attempted to go home (consistent with the MSA and Judgment), and was denied this right, necessitating a locksmith. Although plaintiff sets forth the fantastically implausible tale of private security officers mistreating him while wearing body cameras, the

13

complaint does not set forth facts that Ms. Cafferata directed or ratified such conduct. In fact, the complaint does not state that Ms. Cafferata so much as made eye contact with plaintiff.

Because Ms. Cafferata, as a matter of law, is not liable for the *alleged* unauthorized and unratified intentional misconduct of independent security agents she hired, and no facts are alleged that she did anything intentionally wrong, she cannot be liable on any of the common law intentional tort claims, and these claims should all be dismissed with prejudice.

**B.** **The Third Cause of Action Should Be Dismissed Because the Complaint Fails to Set Forth Any Facts of "Intentional Infliction" by Ms. Cafferata.**

"A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of [decency]…usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'" *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050–1051. "Severe emotional distress [is] emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *U. L. Fletcher v. Western Life Insurance Co.* (1970) 10 Cal.App.3d 376, 397.

The complaint fails to state facts to support even a single one of the elements of an intentional infliction claim. As established, Ms. Cafferata was entitled to equal access to the home as of March 3, 2016—weeks before the entry at issue.

14

There is no dispute Ms. Cafferata was well within her right to go home, and the prudent decision to return with security to protect her transition is not "extreme" and "outrageous'" conduct that exceeds "all bounds of decency. There is no contention Ms. Cafferata made contact with plaintiff, or his property, or did anything to cause "severe emotional distress." Moreover, the complaint includes no facts that plaintiff suffered "severe emotional distress." Plaintiff merely offers the conclusory assertion his emotional distress was "severe," but offers no indication of any physical manifestations of distress, or the need for any physical or mental care relating to the incidents in question.

Moreover, even if plaintiff did suffer severe distress, the complaint does not draw a causal nexus between Ms. Cafferata's exercise of her legal right to return to her home and any purported psychological distress. Even assuming plaintiff suffered stress based upon the conduct of independent security personnel, this is not sufficient to make the required causal link where the complaint sets forth no facts to support the unstated assumption Ms. Cafferata authorized, directed, or ratified any of the alleged acts of the independent security officers.

**C.   The Fourth Claim for "Assault and Battery" Should Be Dismissed Because No Facts Are Alleged to Indicate Ms. Cafferata Made, Ratified, or Authorized a Harmful or Offensive Touching.**

The elements of a cause of action for assault are: (1) the defendant acted with intent to cause harmful or offensive contact, or threatened to touch the plaintiff in a harmful or offensive manner; (2) the plaintiff reasonably believed he was about to be touched in a harmful or offensive manner or it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm. *Carlsen v. Koivumaki*, 227 Cal.App.4th 879, 890 (Cal. App. 3d Dist., 2014). A battery is an

15

1   intentional and offensive touching of a person who has not consented to the

2   touching. *Rains v. Superior Court* (1984) 150 Cal.App.3d 933, 938. Thus, assault

3   and battery are two separate torts plaintiff combines into one.  Regardless, the

4   complaint fails to state a claim for assault, or battery.

5          Even in the loosest possible terms, the complaint does not come close to

6   stating the essential elements of an assault cause of action. Rather, plaintiff merely

7   states he "believed that he would be struck about his body…" (Complaint, ¶ 71.) He

8   does not state why, and does not identify anything Ms. Cafferata did to encourage

9   this "belief."

10         The complaint does not state that Ms. Cafferata engaged in any type of

11  "touching." Nor does it state she authorized, directed, or ratified any touching.

12  Indeed, the allegations of battery are extremely non-specific. Plaintiff does not

13  identify who touched him, what that contact consisted of, or what specific injuries he

14  suffered, if any (as an aside, the bodycam footage confirms there was no touching, or

15  any harm to plaintiff). He merely states he "believed" he would be struck, and was

16  struck "by defendants," failing to specify which of the numerous defendants made

17  contact with him.

18

19                                    **VII.**

20                              **CONCLUSION.**

21         The defects with plaintiff's claims are numerous and fatal, and the complaint

22  simply cannot be cured by amendment. It is manifest from the face of the complaint

23  that the numerous defects with the complaint are fatal, and the case should be

24  dismissed now.

25         As stated at the beginning, the United States District Court is not the "right

26  place" to propagate rancorous family law proceedings closed by a valid Judgment of

27  Dissolution. Ms. Cafferata was not a state actor, did not deprive plaintiff of

28  Constitutional rights, and did not cause him harm. This is clear based upon the

                                      16

*MOTION TO DISMISS – FRCP 12(b)(6)*

allegations as framed by plaintiff. The case should be dismissed. Leave to amend should be denied.

THE SAFARIAN FIRM, APC

Dated: March 12, 2017          By /s/ Harry A. Safarian
                                         Harry A. Safarian
                                         Attorneys for Defendant,
                                         DIANE CAFFERATA