Harry A. Safarian (SBN 204106)
THE SAFARIAN FIRM, APC
1000 N. Central Avenue, Suite 210
Glendale, California 91202
Tel: (818) 334-8528
Fax: (818) 334-8107

hs@safarianfirm.com

Attorneys for Defendant,
DIANE CAFFERATA
(erroneously sued and served as "DIANE CAFFERATA HUTNYAN")

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK HUTNYAN;<br><br>        Plaintiff,<br><br>    v.<br><br>DIANE CAFFERATA HUTNYAN; KRISTIAN HERZOG Also Known as KRIS HERZOG, Individually and Doing Business as THE BODYGUARD GROUP OF BEVERLY HILLS; COUNTY OF LOS ANGELES; RICK TYSON; EDDIE CARTER; GLENN VALVERDE; NICHOLAS JOHNSTON; GERMAINE MOORE; CITY OF MANHATTAN BEACH; RYAN SMALL; CHAD SWANSON; CHRIS NGUYEN; TERESA MANQUEROS,<br><br>        Defendants. | CASE NO. 2:17-cv-00545-PSG-ASx<br><br>Hon. Philip S. Gutierrez<br><br>**NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 ("ANTI-SLAPP"); MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR ATTORNEYS' FEES**<br><br>**[*CONCURRENTLY FILED WITH DECLARATION OF HARRY A. SAFARIAN AND REQUEST FOR JUDICIAL NOTICE*]**<br><br>**Date:** June 5, 2017<br>**Time:** 1:30 p.m.<br>**Judge:** Hon. Philip S. Gutierrez<br>**Courtroom:** 6A (6th Floor) |

1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 5, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Philip S. Gutierrez in the United States District Court for the Central District of California, located at the First Street Courthouse, 350 West 1st Street, Courtroom 6A, 6th Floor, defendant Diane Cafferata (erroneously sued and served as "Diane Cafferata Hutnyan") will, and hereby does, move the Court for an order striking from the complaint, pursuant to California Code of Civil Procedure section 425.16 (the "anti-SLAPP" statute) and California Civil Code section 47, et seq., the entirety of paragraphs 34 through 37 of the complaint or, in the alternative, any portions of those paragraphs the Court determines to be protected communicative activity pursuant to the anti-SLAPP statute and California's litigation privilege codified at Civil Code section 47, et seq.

This Motion is made pursuant to California Code of Civil Procedure, section 425.16 (the Anti-SLAPP statute), and the legal authorities set forth in the attached memorandum of points and authorities. This Motion is also made pursuant to *Baral v. Schnitt*, 1 Cal.5th 376, 388 (August 1, 2016), which confirms an anti-SLAPP motion may be used to attack parts of a count as pleaded. The motion is further brought pursuant to *Batzel v. Smith*, 333 F.3d 1018, 1025-1026 (9th Cir. 2003), *citing generally*, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) and *United States ex rel. Newsham v. Lockheed Missile & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999), which hold an anti-SLAPP Motion may be brought in federal court; the federal court recognizes the protection of the California anti-SLAPP statute as a substantive immunity from suit; and the application of the California anti-SLAPP statute in federal court does not directly interfere with federal procedure, statutes, or rules.

PLEASE TAKE FURTHER NOTICE that Cafferata additionally requests she recover from Plaintiff her attorney's fees and costs incurred in defending this action, pursuant to California Code of Civil Procedure, section 425.16(c). The exact

amount of fees requested will be demonstrated to the Court by noticed motion after the Court's ruling on this Motion.

This motion will be based upon the instant notice of motion and motion, the attached memorandum of points and authorities, the concurrently filed request for judicial notice and declaration of Harry A. Safarian, as well as any other all matters upon which judicial notice may be taken, the papers and pleadings on file herein, and upon any and all other oral and/or documentary evidence as may be presented at the time of said hearing.

**Meet and Confer Pursuant to Local Rule 7-3**: In advance of filing this motion, counsel for Ms. Cafferata provided extensive legal authority in writing, and met and conferred with plaintiff's attorneys telephonically. The meet and confer efforts were substantial, but the parties were unable to come to an agreement and, accordingly, this Motion is filed.

THE SAFARIAN FIRM, APC

Dated: March 12, 2017             By /s/ Harry A. Safarian
                                  Harry A. Safarian
                                  Attorneys for Defendant,
                                  DIANE CAFFERATA

# <u>TABLE OF CONTENTS</u>

I.     Introduction……………………………………………………………...1

II.    Statement of Facts……………………………………………………..2

III.   The Anti-SLAPP Statute May Be Used to Strike "Allegations of Protected Activity Even Without Defeating a Pleaded Cause of Action."………………………………….....................................5

IV.   The Alleged Statements to Police Were Absolutely Privileged as Confirmed by the Language of The Complaint, And Ms. Cafferata Easily Satisfies Prong One………………………………………8

V.    Plaintiff Cannot Prove Success on the Merits And, Accordingly, The Motion Should Be Granted …………….....................................10

VI.   Conclusion...……………………………………………………15

1

## TABLE OF AUTHORITIES

2

### STATUTORY AUTHORITY

3

Ca. Civ. Code § 47, et seq…………………………………………………..11, 13, 15

4

Cal. Code Civ. Proc. § 425.16, et seq…………………………………………...5-9

5

### CASE AUTHORITY

6

7

*1-800-Contacts, Inc. v. Steinberg*,
8      107 Cal.App.4th 568 (Cal. App. 2d Dist., 2003)………………………...13, 14

9

*Action Apartment Ass'n., Inc. v. City of Santa Monica*,
10      41 Cal.4th 1232 (2007)…………………………………………………..11, 14

11

*Adams v. Superior Court*
12      2 Cal.App.4th 521 (Cal. App. 6th Dist., 1992)….…………………………12

13

*Baral v. Schnitt*,
14      1 Cal.5th 376 (August 1, 2016)…………………………………...1, 5, 6, 10

15

*Beroiz v. Wahl*,
16      84 Cal.App.4th 485 (Cal. App. 2d Dist., 2000)…………………………......12

17

*City of Cotati v. Cashman*,
18      29 Cal.4th 69 (2002)…………………………………………………..8

19

*DuPont Merck Pharmaceutical Co. v. Superior Court*,
20      78 Cal.App.4th 562 (Cal. App. 4th Dist., 2000)………………………...8

21

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*,
22      29 Cal.4th 53 (2002). …………………………….........................8

23

*Fenelon v. Superior Court*,
24      223 Cal.App.3d 1476 (Cal.App.4th Dist., 1990)…………………………12

25

*Fremont Comp. Ins. Co. v. Superior Court*
26      44 Cal.App.4th 867 (Cal. App. 4th Dist., 1996)………………………...12

27

28

*ANTI-SLAPP MOTION*

*Hagberg v. California Federal Bank FSB*
     32 Cal.4th 350 (2004)……………………………………………………………12-13

*Hunsucker v. Sunnyvale Hilton Inn*
     23 Cal.App.4th 1498 (Cal. App. 6th Dist., 1994)………………………………12

*Governor Gray Davis Committee v. American Taxpayers Alliance*,
     102 Cal.App.4th 449 (Cal. App. 1st Dist., 2002)………………………………13

*Ketchum v. Alameda County*,
     811 F.2d 1243 (9th Cir. 1987)………………………………………….............3

*Matson v. Dvorak*,
     40 Cal.App.4th 539 (Cal. App. 3d Dist., 1995)…………………………...13

*Metabolife Int'l, Inc. v. Wornick*,
     264 F.3d 832 (9th Cir. 2001)………………………………………………..8

*Passman v. Torkan*,
     34 Cal.App.4th 607 (Cal.App.4th Dist., 1995)………………………………12

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
     190 F.3d 963 (9th Cir. 1999)………………………………………………..8

*Rubin v. Green*,
     4 Cal.4th 1187 (1993)………………………………………………………..11

*Rusheen v. Cohen*,
     37 Cal.4th 1048 (2006)………………………………………………...11-12

*Wallace v. McCubbin*,
     196 Cal.App.4th 1169 (Cal. App. 1st Dist., 2011)…………………………..6, 9

*Williams v. Taylor*,
     129 Cal.App.3d 745 (Cal. App. 3d. Dist., 1982)……………………………12

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION.

After over 20 years of marriage, Diane Cafferata and plaintiff, Mark Hutnyan, divorced. They entered a judicially noticeable Marital Settlement Agreement ("MSA"). The MSA was adopted as the family court's judgment. Pursuant to the MSA's express terms, Ms. Cafferata returned to the home she and plaintiff occupied as husband and wife. She was required to use a locksmith to gain access because plaintiff changed the locks. In an abundance of caution, prior to doing so, Ms. Cafferata hired private security to safely transition her back into the home.

Pre-entry communications notifying law enforcement the entry would occur form part of plaintiff's meritless civil rights claim against Ms. Cafferata. Plaintiff is apparently attempting to rely on these communications to elevate Ms. Cafferata to a "state actor."

The anti-SLAPP statute and broad litigation privilege were crafted to guard against civil liability for the making of absolutely privileged statements to law enforcement such as those plaintiff complains of here. As such, references to the communications should be stricken under the anti-SLAPP statute (and Ms. Cafferata should be awarded her statutory attorneys' fees relating to this motion, and the currently filed and supporting motion to dismiss). The California Supreme Court recently confirmed the anti-SLAPP statute may be used to attack *parts* of a count or allegations. *Baral v. Schnitt*, 1 Cal.5th 376, 388 (August 1, 2016).

The critical public policy question raised by this motion is not new: Should calls or emails to police in anticipation that assistance may be needed be usable in a subsequent legal proceeding as a basis for liability against the party seeking help? Answering this question in the affirmative would chill important free speech rights, and public safety. Moreover, it would conflict with California's sweeping litigation privilege, the anti-SLAPP statute, and decades of appellate authority.

1

This question has been answered over and over by our appellate courts, which require the motion to be granted.

## II.

### STATEMENT OF FACTS.

Plaintiff sues his former wife, Diane Cafferata (sued as "Diane Cafferata Hutnyan") for violation of Civil Rights, as well as common law intentional torts (intentional infliction of emotional distress, assault and battery). As established in the concurrently filed Motion to Dismiss, the complaint is facially meritless, and should be dismissed with prejudice.

The complaint hinges on the false narrative plaintiff had "exclusive" right to occupy a home he and Ms. Cafferata bought as husband and wife years prior to the alleged events at issue, stating:

> On or about March 25, 2016 and March 26, 2016 at plaintiff MARK HUTNYAN's residence, located at 224 32nd Street, Manhattan Beach, California ("the Home"), defendants, and each of them, unlawfully and forcefully entered the Home without any knocking, warning, or notice, in violation of plaintiffs civil rights…

Complaint, ¶ 26.

Plaintiff omits critical facts the Court should judicially notice: (1) plaintiff and Ms. Cafferata purchased the home together, (2) they entered the signed, notarized MSA with an "Effective Date" of March 3, 2015, (3) the MSA became part of the family court Judgment of Dissolution, and states:

> Respondent [plaintiff Hutnyan] will occupy the marital residence as long as he wishes up to **one year** or some other length of time agreed to by the Parties, or until it is sold, whichever is earlier.

2

Request for Judicial Notice, Ex. "A" (See MSA attached to Judgment of Dissolution filed with the Los Angeles Superior Court at ¶¶ 4.1 and 4.2.)

The "sole possession" period expired by the time of the March 25 and 26, 2016 events at issue. Thus, Ms. Cafferata did nothing more than return to her home as the parties had agreed under the MSA.

Plaintiff offers an implausible and factually naked narrative. Ms. Cafferata, an accomplished lawyer who, as confirmed by the terms of the MSA, provided for plaintiff for many years (and will continue to do so in the future under the MSA) "retained the services of defendants HERZOG, a retired police officer, and THE BODYGUARD GROUP to enter the Home with defendant [Cafferata] armed with weapons to harass, threaten, intimidate plaintiff…" Complaint, ¶ 30.

As more thoroughly explained in the concurrently filed motion to dismiss, plaintiff states no facts that would make Ms. Cafferata a "state actor," or facts that could trigger a private right of action under section 1983. In fact, he admits the subject "bodyguard business…retains and privately employs law enforcement officers *off duty*, including Los Angeles County Sheriff Deputies and other employees and agents of defendant COUNTY OF LOS ANGELES the…" (Complaint, ¶ 31.) The concession "***privately employs***" is key, confirming no state actors were involved.

"A § 1983 claim requires two essential elements: (1) the conduct that harms the plaintiff must be committed under color of state law (i.e., state action), and (2) the conduct must deprive the plaintiff of a constitutional right." *Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987). In a futile attempt to establish the "state action" required to support the first claim for violation of civil rights, plaintiff contends:

- <u>Paragraph 34</u>: That, on or about March 23, 2016, the City of Manhattan Beach Police Department was notified "via e-mail that defendants HERZOG and COUNTY EMPLOYEES intended to enter the Home with

3

defendants Mrs. Hutnyan armed with weapons and wearing body cameras."

- **Paragraph 35**: That, on or about March 23, 2016, the City of Manhattan Beach Police Department was notified in writing "via e-mail that plaintiff MARK HUTNYAN would make a 'fake' 911 telephone call to defendant Manhattan Beach Police Department once defendants HERZOG, COUNTY EMPLOYEES, and MRS. HUTNYAN entered the home."

- **Paragraph 36**: That, "On or about March 23, 2016, defendants HERZOG and/or COUNTY EMPLOYEES further advised defendant CITY OF MANHATTAN BEACH through a telephone conversation with defendant RYAN SMALL, Lieutenant of the Manhattan Beach Police Department, that defendants HERZOG and COUNTY EMPLOYEES intended to enter the Home with defendants MRS. HUTNYAN armed with weapons and wearing body cameras."

- **Paragraph 37**:

    On or about March 25, 2016, defendants HERZOG and/or COUNTY EMPLOYEES called defendant CITY OF MANHATTAN BEACH and spoke with dispatch of the Manhattan Beach Police Department to report that they were near to, or were already at the Home with defendant MRS. HUTNYAN, were armed, and they were going to enter the Home, by force if necessary, because the husband, plaintiff MARK HUTNYAN, was "squatting in the house", in that defendant MRS. HUTNYAN was the "owner" of the Home, and further that plaintiff MARK HUTNYAN was "inebriated most of the time". During this conversation with defendant CITY OF MANHATTAN BEACH through dispatch of the Manhattan Beach Police Department, defendants

4

1   HERZOG and/or COUNTY EMPLOYEES referred to
2   plaintiff MARK HUTNYAN as the "suspect", and referred
3   to defendant MRS. HUTNYAN as the "victim".

4

5       As established below, each of the above-referenced communications,
6   assuming they were made, are absolutely protected and non-actionable. The
7   statements are subject to a special motion to strike pursuant to California Code of
8   Civil Procedure section 425.16, and absolutely protected under the litigation
9   privilege. The Court should grant this motion and Cafferata should be awarded
10  attorneys' fees pursuant to section 425.16.

11

12                                **III.**

13      **THE ANTI-SLAPP STATUTE MAY BE USED TO STRIKE**
14  **"ALLEGATIONS OF PROTECTED ACTIVITY EVEN WITHOUT**
15            **DEFEATING A PLEADED CAUSE OF ACTION."**

16      Code of Civil Procedure section 425.16 (b)(1) (the "anti-SLAPP statute"),
17  states, in part:

18          A cause of action against a person arising from any act of that
19          person in furtherance of the person's right of petition or free
20          speech under the United States or California Constitution in
21          connection with a public issue shall be subject to a special
22          motion to strike, unless the court determines that the plaintiff has
23          established that there is a probability that the plaintiff will prevail
24          on the claim...

25  Cal. Code Civ. Proc. § 425.16(b)(1).

26      Very recently, the California Supreme Court determined an anti-SLAPP
27  motion may be used to strike allegations of protected activity even without defeating
28  a pleaded cause of action or primary right. *Baral v. Schnitt*, 1 Cal.5th 376, 388

                                    5

(August 1, 2016).  The *Baral* court emphasized:

> We agree with the *Cho* and *Wallace* courts that the Legislature's choice of the term "motion to strike" reflects the understanding that an anti-SLAPP motion, like a conventional motion to strike, **may be used to attack parts of a count as pleaded**. (§ 425.16(b)(1); *Cho, supra,* 219 Cal.App.4th at p. 527, 161 Cal.Rptr.3d 846; *Wallace, supra,* 196 Cal.App.4th at p. 1205, fn. 19, 128 Cal.Rptr.3d 205; see § 435, subd. (b)(1) [motion to strike applies to "the whole or any part" of a pleading]; § 436, subd. (a) [court may "[s]trike out any irrelevant, false, or improper matter"]; *PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682, 40 Cal.Rptr.2d 169 [defective portion of a cause of action is subject to a conventional motion to strike].) The bench and bar are used to thinking of motions to strike as a way of challenging particular allegations within a pleading. (See 5 Witkin, Cal. Procedure, *supra,* Pleading, §§ 1009, 1012, pp. 420–421, 423; Weil et al., Cal. Practice Guide, Civil Procedure Before Trial (The Rutter Group 2016) ¶ 7:156, p. 7(I)–70.) The drafters of the anti-SLAPP statute were surely familiar with this understanding.

*Id.* (emphasis added).

The *Baral* court went on to explain the procedure that should be followed once a determination is made that the complaint includes statements that constitute protected activity:

> Although the issue arose here at the second step of the anti-SLAPP procedure, identification of causes of action

6

arising from protected activity ordinarily occurs at the first step. For the benefit of litigants and courts involved in this sometimes difficult area of pretrial procedure, we provide a brief summary of the showings and findings required by section 425.16(b). At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. **If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached**. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing.

*Id.* (emphasis added).

7

## IV.

## THE ALLEGED STATEMENTS TO POLICE WERE ABSOLUTELY PRIVILEGED AS CONFIRMED BY THE LANGUAGE OF THE COMPLAINT, AND MS. CAFFERATA EASILY SATISFIES PRONG ONE.

"The anti-SLAPP statute was enacted to allow for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). The statute was "intended broadly to protect, *inter alia*, direct petitioning of the government and petition-related statements and writings…." *Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 61 (2002). The anti-SLAPP statute was expressly amended in 1997 to mandate that it "shall be construed broadly" to achieve its ends. *Id.* at 60; Code Civ. Proc. § 425.16(a).

Allegations subject to a special motion to strike are those "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Code Civ. Proc. § 425.16(b)(1). As such, a defendant bringing an anti-SLAPP motion has the initial burden of making a prima facie showing the claims alleged against her arise from acts in furtherance of the right of petition or free speech under the United States or California Constitutions in connection with a public issue. *See*, *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999); *DuPont Merck Pharmaceutical Co. v. Superior Court*, 78 Cal.App.4th 562, 567 (Cal. App. 4th Dist., 2000).

In the anti-SLAPP context, the critical issue is whether the claim or allegations are based on acts in furtherance of the right of petition or speech. *City of Cotati*, supra, 29 Cal.4th at 69, 78 (2002).

> [An] act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:

8

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other office proceeding authorized by law....

Code Civ. Proc. § 425.16(e)(1)-(2).

*Moreover, the fact that a defendant's conduct was alleged to be illegal, or that there was some evidence to support a finding of illegality, does not preclude protection under the anti-SLAPP law*. (*Birkner*, *supra*, 156 Cal.App.4th at pp. 278-279, 285, 67 Cal.Rptr.3d 190 [landlord's termination notice did not fall outside the scope of the anti-SLAPP statute merely because it allegedly violated the Rent Ordinance] . . .

*Wallace v. McCubbin*, 196 Cal.App.4th 1169, 1188 (Cal. App. 1st Dist., 2011). "An exception exists only where "the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence." *Id.*

Plaintiff acknowledges the statements were made to law enforcement prior to entry into the home by armed private security personnel. These statements implicate the anti-SLAPP statute because they arise out of constitutionally protected activity of communicating with law enforcement. The gravamen of the statements is that communications were made to law enforcement that entry would be made into "the Home," and that plaintiff might offer resistance, that force might be necessary, and that plaintiff might be a "inebriated" or become physically combative. In other words, law enforcement was forewarned of reasonably feared confrontation by plaintiff. Ms. Cafferata absolutely denies the statements were illegal, and it cannot

9

be "conclusively shown" the statements were "illegal" because they were absolutely protected as explained below.

Ms. Cafferata easily satisfies the first prong. Because of the privileged nature of the communications, plaintiff cannot possible carry his burden to show likely success on the merits, and the second prong is satisfied as a matter of law in Ms. Cafferata's favor, justifying the granting of this motion.

## V.

## PLAINTIFF CANNOT PROVE SUCCESS ON THE MERITS AND, ACCORDINGLY, THE MOTION SHOULD BE GRANTED.

As discussed above, the California Supreme Court, in *Baral*, emphasized that once a determination is made that relief sought is based upon allegations arising from protected activity, the second step of the anti-SLAPP analysis is reached. Thus, the "burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral,* supra, 1 Cal.5th at 388.

The *Baral* court further instructed, "The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." *Id.* If plaintiff cannot do so, the claim is stricken, and allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing.

The first prong is easily satisfied as explained above. In an effort to overcome the anti-SLAPP statute, plaintiff may argue a jury should "weigh facts" and that prong two should essentially be bypassed based. But, the is not a summary judgment motion. Rather, it is a motion supported by compelling public policy concerns crafted to "nip" meritless claims based upon communicative activity in the bud. And, more importantly, because the statements at issue are absolutely protected, it is

10

1  **impossible** for plaintiff to carry his burden under prong two, and it is axiomatic that

2  the motion be granted.

3  Stated otherwise, because communications to law enforcement are generally

4  protected, the litigation privilege applies, and Plaintiff **cannot** prevail on any claims

5  based upon the statements at issue—i.e., he cannot carry his burden on the second

6  prong. Civil Code section 47 establishes a privilege that bars liability, soundly

7  defeating plaintiff's ability to make showing required of him to survive this motion.

8  Specifically, section 47(b) states:

9  [This] privilege is absolute in nature, applying to all

10  publications, ***irrespective of their maliciousness***. The

11  usual formulation is that the privilege applies to any

12  communication (1) made in judicial or quasi-judicial

13  proceedings; (2) by litigants or other participants

14  authorized by law; (3) to achieve the objects of the

15  litigation; and (4) that [has] some connection or logical

16  relation to the action. The privilege is not limited to

17  statements made during a trial or other proceedings, but

18  may extend to steps taken prior thereto, or afterwards."

19  *See Action Apartment Ass'n., Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1241

20  (2007) (emphasis added).

21  Because the statements to law enforcement are privileged, they cannot be

22  used to support any cause of action, and plaintiff cannot carry his burden under the

23  second prong. The privilege is interpreted very broadly, and applies to "any

24  communication, whether or not it amounts to a publication ..., and all torts except

25  malicious prosecution.'" *Rusheen v. Cohen*, 37 Cal.4th 1048, 1057 (2006). "For well

26  over a century, communications with 'some relation' to judicial proceedings have

27  been absolutely immune from tort liability by the privilege codified as section

28  47(b)." *See Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993).  "*Any doubt as to whether*

11

*the privilege applies is resolved in favor of applying it*." *Adams v. Superior Court* 2 Cal.App.4th 521, 529 (Cal. App. 6th Dist., 1992) (emphasis added).

In *Williams v. Taylor*, 129 Cal.App.3d 745, 753 (Cal. App. 3d. Dist., 1982), the Court held a report to a police department concerning suspected criminal activity to be within the absolute privilege accorded official proceedings. *Williams* was disapproved in *Fenelon v. Superior Court*, 223 Cal.App.3d 1476, 1479 (Cal.App.4th Dist., 1990), holding that such a report was protected only by the qualified privilege given communications made without malice to interested persons.

Numerous subsequent Court of Appeal decisions followed *Williams*, rather than *Fenelon.*

- *Hunsucker v. Sunnyvale Hilton Inn*, 23 Cal.App.4th 1498, 1502 (Cal. App. 6th Dist., 1994): Motel owner's report to police that woman with gun was seen in plaintiff's room was absolutely privileged.

- *Passman v. Torkan*, 34 Cal.App.4th 607, 616 (Cal. App. 4th Dist., 1995): Communications designed to prompt criminal prosecution directed to official governmental agency empowered to commence criminal prosecutions are absolutely privileged.

- *Fremont Comp. Ins. Co. v. Superior Court*, 44 Cal.App.4th 867, 875 (Cal. App. 4th Dist., 1996): Defendant insurers were absolutely privileged to report plaintiff's overbilling to Insurance Department and local district attorney's office; *Fenelon* not followed).

- *Beroiz v. Wahl*, 84 Cal.App.4th 485, 495 (Cal. App. 2d Dist., 2000): Although "California courts have split about whether communications that initiate or prompt criminal investigation are subject to the absolute privilege," a "majority of cases that have addressed this issue follow *Williams*").

Moreover, in *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350 (2004), the California Supreme Court adopted the *Williams* rule. A customer filed

12

suit against defendant bank for falsely reporting to police that she had attempted to cash an invalid check, alleging a number of tort causes of action. The Supreme Court affirmed summary judgment for defendant, concluding the report was absolutely privileged. The *Hagberg* court stated:

> [W]e agree with the trial court, the Court of Appeal, and the great weight of authority in this state" that these statements are privileged under Civil Code 47(b) and can be the basis for tort liability only if the plaintiff can establish the elements of the tort of malicious prosecution.

*Id.* at 355.

Thus, the communications at issue were clearly protected by the litigation privilege and, therefore, plaintiff cannot, under any circumstances, carry his burden of proving success on the merits of any cause of action based upon these protected statements. Again, it will be plaintiff's burden—not Ms. Cafferata's—to establish probable success on the merits to survive an anti-SLAPP motion. *Governor Gray Davis Committee v. American Taxpayers Alliance*, 102 Cal.App.4th 449, 459 (Cal. App. 1st Dist., 2002).

To carry this burden, plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Matson v. Dvorak*, 40 Cal.App.4th 539, 548 (Cal. App. 3d Dist., 1995). The Court not only evaluates a plaintiff's case, but also a defendant's opposing evidence to determine whether it defeats the plaintiff's claims as a matter of law. *1-800-Contacts, Inc. v. Steinberg* 107 Cal.App.4th 568, 585 (Cal. App. 2d Dist., 2003).

Since the claims at issue concern reports to law enforcement, it is clear the litigation privilege applies, and Ms. Cafferata easily satisfies the first prong of the anti-SLAPP statute (that the claim is based on protected communication activity). Thus, plaintiff will be unable to show *probable* success on the merits to overcome

the anti-SLAPP motion. And, the Court not only evaluates a plaintiff's case, but also a defendant's opposing evidence to determine whether it defeats the plaintiff's claims as a matter of law. *1-800-Contacts, Inc.*, supra, 107 Cal.App.4th at 585. Since the litigation privilege clearly applies, it is impossible for Plaintiff to prevail on his claims, or establish the statements at issue should even be given consideration given their absolutely protected nature.

   As explained above, Civil Code section 47(b) expressly states that the privilege is "absolute in nature," applies to "all publications, irrespective of their maliciousness." Cal. Civ. Code § 47(b); *See Action Apartment Ass'n., Inc.*, *supra*, at 1241 (emphasis added).

   The privilege is interpreted very broadly, and applies to "any communication, whether or not it amounts to a publication ..., and all torts except malicious prosecution.'" *Rusheen*, *supra*, at 1057.

   Again, because the statements at issue are absolutely protected, plaintiff cannot possibly prove "probable" success on the merits of any claim based upon the statements. The statements are inadmissible in the first place because of their privileged nature.

   Even ignoring the absolute privilege, plaintiff cannot possibly establish success on the merits of the section 1983 claim against Ms. Cafferata—the sole claim the subject statements are tied two. Naturally, the making of statements to law enforcement about perceived or anticipated inebriation or violence by plaintiff are not offered to support the fact plaintiff was "assaulted," "battered," or that he was subjected to "extreme and outrageous conduct" resulting in "severe emotional distress."

   Again, it is clear the only claims the referenced statements could possibly lend support to are those for violation of section 1983. It is manifest that plaintiff cannot possibly prevail on a section 1983 claim against Ms. Cafferata because she was not a state actor, and because she did not cause Plaintiff to suffer a

14

Constitutional deprivation (as easily established in the concurrently filed motion to dismiss pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6)). The legal authorities confirming the lack of state action cannot be explained away, or distinguished from the facts here. They are on point, and plaintiff simply cannot prevail on a section 1983 claim against Ms. Cafferata because he cannot establish state action or a constitutional deprivation. Thus, by extension, plaintiff cannot possibly defeat an anti-SLAPP motion, or establish probable success on the merits.

## VI.
## CONCLUSION.

Frederick Douglass said, "*To suppress free speech is a double wrong. It violates the rights of the hearer as well as those of the speaker*." Mr. Douglas was right.

The Hearer. Plaintiff seeks to stifle the right to communicate with law enforcement. Few, if any, types of communication can be said to carry greater import to the public welfare and the ability of citizens to feel secure in society—especially in their own homes—as in the instant case.

Allowing plaintiff to prop up his meritless section 1983 claim on the backs of statutorily protected statements would impede law enforcement's ability to receive free communication critical to public welfare, violating the "rights of the hearer," and comprising the "hearer's" ability to protect the speaker, and everyone else.

The Speaker. Rendering civilly actionable a private citizen's statements to police would stifle the rights, peace of mind, and safety of the private citizen speaker. In turn, not only is the speaker harmed, so is everyone else.

Here, Ms. Cafferata, the "speaker," is alleged to have forewarned police of her transition back into her home after contested divorce proceedings. Fear that such communications would result in civil liability would chill such communications. The self-explanatory consequences could be catastrophic, and need not be detailed

15

here. Thankfully, the litigation privilege, anti-SLAPP statute, and numerous case authorities analyzed above, render the statements attributed to Ms. Cafferata/her private security, privileged and non-actionable. The rights of the "speaker," Ms. Cafferata, are protected under the law, and this Court should reinforce that critical protection and grant this motion (as well as the concurrently filed motion to dismiss).

This dispute disguised as a federal case is nothing more than another vehicle for plaintiff's obsessed perpetuation of contested family law proceedings. Plaintiff underscores statutorily protected communications to law enforcement, ignoring the fact they are privileged, to prop up a meritless civil rights claim and concurrently engineer a federal question. He does so with the unstated but transparent goal of elevating and reviving a closed divorce case, dropping it onto the busy desk of this United States Court. Plaintiff seeks to exhume the divorce case from the grave and have this Court breathe new life into the seemingly unending attack on his former spouse.

This case should be put where it belongs: the grave. This motion, and the concurrently filed motion to dismiss, should be granted, and Ms. Cafferata should be awarded her attorneys' fees.

THE SAFARIAN FIRM, APC

Dated: March 12, 2017          By /s/ Harry A. Safarian
                                  Harry A. Safarian
                                  Attorneys for Defendant,
                                  DIANE CAFFERATA

16