1  Larry M. Bakman, Esq., SBN: 88964
   1875 Century Park East, Suite 700
2  Los Angeles, California 90067
3  (310) 553-5512; Fax: (844) 272-3958
   Email: lbakman@lbakmanlaw.com
4
5  Garry S. Malin, Esq., SBN: 118002
   2660 Townsgate Road, Suite 600
6  Westlake Village, California 91361
   (805) 496-2244; Fax (805) 497-8856
7  Email: gmalin@malinlaw.com
8  Attorneys for Plaintiff
9
10              **UNITED STATES DISTRICT COURT**
11            **CENTRAL DISTRICT OF CALIFORNIA**
12
13  MARK HUTNYAN,                          ) Case No.: 2:17-cv-00545-PSG-ASx
                                           )
14             Plaintiff,                  )
15        v.                               ) **PLAINTIFF'S OPPOSITION TO**
                                           ) **DEFENDANT COUNTY OF LOS**
                                           ) **ANGELES' MOTION TO DISMISS**
16  DIANE CAFFERATA HUTNYAN;               ) **PLAINTIFF'S COMPLAINT PURSUANT**
    KRISTIAN HERZOG Also Known As          ) **TO FRCP 12(b)(6); MEMORANDUM OF**
17  KRIS HERZOG, Individually and          ) **POINTS AND AUTHORITIES**
    Doing Business As THE BODYGUARD        )
18  GROUP OF BEVERLY HILLS;                ) Date:        July 10, 2017
19  COUNTY OF LOS ANGELES;                 ) Time:        1:30 p.m.
    RICKY TYSON; EDDIE CARTER;             ) Courtroom:   6A
20  GLENN VALVERDE;                        ) Judge: Hon. Philip S. Gutierrez
21  NICHOLAS JOHNSTON;                     )
    GERMAINE MOORE;                        ) [Request for Judicial Notice filed concurrently]
22  CITY OF MANHATTAN BEACH;               )
    RYAN SMALL; CHAD SWANSON;              )
23  CHRIS NGUYEN; TERESA MANQUEROS;        )
24  and DOES 1 to 10, Inclusive,           )
                                           )
25             Defendants.                 )
                                           )
26  _____)
27  ///
28

1

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.............................2

I.    INTRODUCTION...............................................2

II.   STATEMENT OF FACTS.........................................3

III.  THE COMPLAINT PROVIDES DEFENDANT WITH FAIR
      NOTICE OF THE CLAIM AND THE FACTUAL ALLEGATIONS
      SHOW A PLAUSIBLE CLAIM FOR RELIEF.........................10

      1. Applicable Pleading Standards.........................10

      2. The Conspiracy Allegations Impose Liability
         Against Defendant for All Causes of Action.............11

      3. The First and Second Causes of Action under
         42 U.S. § 1983 Each State a Cause of Action
         Against Defendant.....................................12

      4. The Complaint States a Claim for Intentional
         Infliction of Emotional Distress......................17

      5. The Complaint States a Claim for Assault and Battery....19

IV.   IF THE COURT GRANTS THE MOTION IN ANY PART,
      THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND...........19

V.    CONCLUSION................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

**Anderson v. Warner**
451 F.3d 1063 (9th Cir. 2006)....................................15

**Ashcroft v. Iqbal**
556 U.S. 662, 678 (2009)........................................10

**Bell Atlantic Corp. V. Twombly**
550 U.S. 544, 570 (2007)........................................10

**Coleman v. Maryland Court of Appeals**
626 F.3d 187, 190 (4th Cir. 2010)...............................11

**Evans v. McKay**
869 F.2d 1341, 1348 (9th Cir. 1989).............................15

**Fletcher v. Western National Life Insurance Co.**
(1970) 10 Cal.App.3d 376, 397...................................17

**Fraguglia v. Sala**
(1936) 17 Cal.App.2d 738, 742 ..................................19

**Garcia v. City of Chicago**
2003 WL 1715621 (N.D. Ill.2003).................................16

**Gibson v. City of Chicago**
910 F.2d 1510 (7th Cir. 1990)...............................15, 16

**Huffman v. County of Los Angeles**
147 F.3d 1054 (9th Cir. 1998)...................................16

**Keys v. Humana, Inc.**
684 F.3d 605, 609-610 (6th Cir. 2012)...........................11

**Khalik v. United Air Lines**
671 F.3d 1188, 1191-1192 (10th Cir. 2012).......................11

**Leatherman v. Tarrant County Narcotics Unit**
507 U.S. 163, 168 (1993)........................................10

**Martinez v. Colon**
54 F.3d 980, 987 (1st Cir. 1995)................................15

**McDade v. West**
223 F.3d, 1135, 1140 (9th Cir. 20...............................15

**Monell v. Dept. of Social Servs. of New York**
436 U.S. 658, 690 (1978)........................................12

1

### TABLE OF AUTHORITIES

2

**Cases**                                                                 **Page(s)**

3

**Newby v. Alto Rivera Apartments**

4

(1976) 60 Cal.App.3d 288, 297 fn. 2 ...........................18

5

**Rodríguez-Reyes v. Molina-Rodríguez**

6

711 F.3d 49, 53(1st Cir. 2013...................................11

7

**Saunders v. Superior Court**

8

27 Cal.App.4th 832, 845-846 (1994)...............................12

9

**Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.**

10

806 F.2d 1393, 1401 (1986)......................................19

11

**Sheppard v. David Evans & Assoc.**

694 F.3d 1045, 1048-1049 (9th Cir. 2012).......................10

12

**State Rubbish Collectors Association v. Siliznoff**

13

(1952) 38 Cal.2d 330, 336.......................................17

14

**Van Ort v. Estate of Stanewich**

92 F.3d 831, 839 (9th Cir. 1998).............................15, 16

15

**Wyatt v. Union Mortgage Co.**

16

24 Cal.3rd 773, 74 (1979).......................................12

17

18

**Statutory Authority**                                                   **Page(s)**

19

**Federal Rule Of Civil Procedure 8(a)**...........................10

20

**Federal Rule Of Civil Procedure 12(b)(6)**.................2, 11, 16

21

**Federal Rule Of Civil Procedure 15(a)**..........................19

22

**42 U.S.C. § 1983**................................7, 10, 11, 12, 13

23

**Penal Code § 240** ..............................................19

24

**Penal Code § 242**...............................................19

25

26

**Secondary Authority**                                                   **Page(s)**

27

**Restatement of Torts Second § 46**...............................18

28

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

COMES NOW, Plaintiff Mark Hutnyan ("Hutnyan" or "Plaintiff"), who hereby submits the attached memorandum of points and authorities in opposition to defendant County of Los Angeles' motion to dismiss pursuant to FRCP 12(b)(6):

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendant County of Los Angeles ("County") has filed a motion to dismiss claiming the unauthorized entry into Hutnyan's home by its officers was not illegal because Hutnyan and his ex-wife, co-defendant Diane Cafferata Hutnyan ("Cafferata" or "MRS. HUTNYAN") are parties to a Marital Settlement Agreement (See County's Request for Judicial Notice; hereinafter the "MSA"), which she claims apparently allowed her to enter the home that Hutnayan had sole possession of for over the prior year, with a party of the individual deputy sheriff defendants, wearing tactical gear, using body cameras, under cover of darkness (10:00 p.m.), unannounced through the use of a locksmith who drilled the lock out of the door to gain access.

The reality is that under the guise of a claim of right to possession under the MSA, instead of simply contacting Hutnyan and requesting a mutually convenient date and time to come to the home that is the subject of the MSA, Cafferata, along with the co-defendants, consisting primarily of L.A. County Sheriff Department officers illegally entered the home and violated the MSA, while it was legally occupied by Hutnyan in violation of his civil rights, thereby causing the injuries and damages alleged in the complaint. In fact, the MSA specifically provides that Respondent (Hutnyan) will provide "Petitioner [Cafferata] with access to the marital residence **upon reasonable notice** from Petitioner [Cafferata]. (See MSA, p.11;

2

1
2
3
4
5

emphasis added.) The conduct alleged in the complaint hardly constitutes "reasonable notice;" it constitutes extremely reckless and illegal conduct by all defendants who conspired to engage in the wrongful acts. In fact, the conduct of Cafferata and her co-defendants, as alleged in the complaint, ultimately resulted in a CLETS Order against Cafferata (See Plaintiff's Request for Judicial Notice, Exhibit "2".)

6
7
8

As set further below, the complaint more than adequately asserts the causes of action alleged in the complaint to survive a motion to dismiss.

9
10

As set further below, the complaint more than adequately asserts the causes of action alleged in the complaint to survive a motion to dismiss.

11
12
13

## II.   STATEMENT OF FACTS

14

The following facts relevant to defendant's motion are alleged in plaintiff's complaint:

15
16
17
18
19
20

- On March 25 and March 26, 2016 at Plaintiff's residence in Manhattan Beach (the "home"), Defendants, and each of them, unlawfully and forcefully entered the home without knocking, warning, notice, all in violation of Plaintiff's civil rights under Fourth and Fourteenth Amendments of the United States Constitution and statutory law (Complaint, ¶ 26.)

21
22
23
24
25

- On or about March 3, 2015 DIANE CAFFERATA HUTNYAN ("MRS. HUTNYAN") and Plaintiff entered into a Marital Settlement Agreement ("MSA"), wherein Plaintiff was awarded temporary sole possession of the home. Consistent with this Agreement MS. HUTNYAN vacated the home. (*Id.* at ¶ 29.)

26
27
28

- While Plaintiff still maintained sole possession of the home, pursuant to the MSA, MRS. HUTNYAN retained the services of Defendants HERZOG, a retired police officer, and THE BODYGUARD GROUP, to enter the home with MRS.

3

HUTNYAN armed with weapons to harass, threaten and intimidate Plaintiff. (*Id.*, ¶ 30.)

- HERZOG employs law enforcement officers, including Los Angeles County Sheriff's Deputies and other employees and agents of the County of Los Angeles, including named Defendants TYSON, CARTER, VALVERDE, JOHNSTON, MOORE (collectively "COUNTY EMPLOYEES"); and these named Defendants were so employed for this so-called assignment for MRS. HUTNYAN. *(Id.* at ¶ 31.)

- Defendant COUNTY OF LOS ANGELES knew or should have known that its officers, including the Defendant COUNTY EMPLOYEES routinely worked and continue to work off duty in so-called security positions including their work with Defendant HERZOG and THE BODYGUARD GROUP. (*Id.* at ¶ 32.)

- On or about March 23, 2016, the Defendants notified the CITY OF MANHATTAN BEACH, through the Manhattan Beach Police Department in writing by email that Defendants HERZOG and the COUNTY EMPLOYEES intended to enter the home with MRS. HUTNYAN armed with weapons and wearing body cameras. (Id. at ¶ 34.)

- On the same date, Defendants HERZOG and/or the COUNTY EMPLOYEES advised the CITY OF MANHATTAN BEACH through the Manhattan Beach Police Department in writing by email that Plaintiff would make a "fake" 911 call to Defendant Manhattan Beach Police Department when Defendants HERZOG, the COUNTY EMPLOYEES and MRS. HUTNYAN entered the home. (*Id.* at ¶ 35.)

- On the same date, Defendants HERZOG and/or COUNTY EMPLOYEES advised the CITY OF MANHATTAN BEACH by a telephone call with Defendant RYAN SMALL, Lieutenant with the Manhattan Beach Police Department, that HERZOG

4

1

2

and the COUNTY EMPLOYEES, along with MRS. HUTNYAN intended to enter the home armed with weapons and wearing body cameras. (*Id.* at ¶ 36.)

3

4

5

6

7

8

9

10

11

- On March 25, 2016, HERZOG and/or the COUNTY EMPLOYEES called dispatch of the Manhattan Beach Police Department to inform them that they were either near to, or were already at the home with Defendant MRS. HUTNYAN, they were armed, and they were going to enter the home, by force if necessary, because Plaintiff was "squatting in the house", that MRS. HUTNYAN was the "owner" of the home, and Plaintiff was "inebriated most of the time." During this conversation Defendants HERZOG and/or COUNTY EMPLOYEES referred to Plaintiff as "the suspect", and referred to MRS. HUTNYAN as "the victim." (*Id.* at ¶ 37.)

12

13

14

15

16

17

18

19

20

21

22

- On March 25, 2016, between 10:00 and 10:30 p.m., Defendants HERZOG, the five-armed COUNTY EMPLOYEES clad in tactical uniform gear and wearing body cameras, along with MRS. HUTNYAN unlawfully entered into the home by force, using the services of a locksmith who used a drill or other equipment to force the lock on the front door of the home and break-in the home to gain access, and did thus unlawfully invade and search the home. Plaintiff was inside the home alone at that time. Plaintiff was struck on his arm and upon his body during this unlawful break-in and invasion into the home. Plaintiff did not consent to this invasion into the home. (*Id.* at ¶ 38.)

23

24

25

26

27

- During this invasion, Plaintiff was harassed, threatened, intimidated and was told by the Defendants including the COUNTY EMPLOYEES and MRS. HUTNYAN that if he refused to provide them with keys to the home, the hired locksmith would forcibly open all of the other locks to the home. (*Id.* at ¶ 39.)

28

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- During this home invasion, all of the Defendants, including the COUNTY EMPLOYEES and MRS. HUTNYAN continually harassed, threatened and intimidated Plaintiff by engaging in various forms of improper conduct and telling him he had to move his cars from the garage. (*Id.* at ¶¶ 40-41.)

- During the home invasion, Plaintiff called 911 and explained in detail to the CITY OF MANHATTAN BEACH through dispatch of the Manhattan Beach Police Department what was happening to him and that he had retreated in fear to his bedroom. (*Id.* at ¶ 42.)

- During the invasion, Defendants SWANSON, NGUYEN and MANQUEROS ("CITY EMPLOYEES"), police officers employed by Defendant CITY OF MANHATTAN BEACH through the Manhattan Beach Police Department, arrived at the home, but rather than impartially investigate the incident, the CITY EMPLOYEES failed to follow proper City of Manhattan Beach Police Department procedures in the investigation before, during and after this home invasion occurred. (*Id.* at ¶ 43.)

- Defendant CITY OF MANHATTAN BEACH and the CITY EMPLOYEES through the Manhattan Beach Police Department failed to take any measures to investigate, inquire, access, act upon, intervene or determine the legality or illegality of the home invasion suffered by Plaintiff and failed to follow proper police procedures. (*Id.* at ¶ 44.)

- Due to the harassment, threats and intimidation by all the Defendants, Plaintiff was forced to, and did in fact leave his home that evening out of fear, worry and anxiety, and temporarily resided at a hotel. (*Id.* at ¶ 45.)

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- In essence, because of the standing of the police officers, Defendants ignored the explanation provided by Plaintiff and instead, chose to and did act illegally. The actions and inactions by Defendants shocked the conscience and demonstrated deliberate indifference and conscious disregard for Plaintiff's life, liberty, well-being and were all in violation of his civil rights. (*Id.* at ¶ 46.)

- Due to the actions and inactions by each of the Defendants, Plaintiff suffered injuries and damages. (*Id.* at ¶ 47.)

- Defendant COUNTY OF LOS ANGELES through the Los Angeles County Sheriff's Department caused Plaintiff's injuries and damages through their policies, practices, customs and/or usages that ratify the abuse and misuse of police power and the use of unnecessary and unreasonable means by Defendants COUNTY EMPLOYEES and CITY EMPLOYEES. (*Id.* at ¶ 48.)

- Each of the Defendants conspired and acted in concert with each of the other Defendants and under color of the authority and pretense of the statutes, ordinances, regulations, customs, or usages, of Defendants COUNTY OF LOS ANGELES and CITY OF MANHATTAN BEACH in authorizing, directing, and/or causing Plaintiff to suffer excessive force in the entering of the home, conducting an unlawful search of the home and Plaintiff's personal property, committing unlawful harassment, threats, course of conduct and intimidation, which was unreasonable and done intentionally, without lawful justification or reason, and was designed to and did cause injury to Plaintiff's rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable search of the home, and of Plaintiff's papers and effects, and the right to be free from use of excessive, unreasonable and

7

unjustified force, and the right to be free from the use of unlawful harassment, threats, course of conduct and intimidation. (*Id.* at ¶ 53.)

- As a proximate result of the conduct of Defendants, Plaintiff suffered serious injuries to his health, strength, including injuries to his body, his nervous system and emotional injuries causing him to incur general and special damages. (*Id.* at ¶ 54.)

- Defendant COUNTY OF LOS ANGELES maintains policies, practices, customs, and usages, that condoned, tolerated, and allowed its officers, including Defendants COUNTY EMPLOYEES to commit and execute the unconstitutional use of unnecessary, unreasonable and/or excessive force, unlawful searches and seizures, unlawful harassment, threats, coercion and intimidation; the culture and promotion of Defendant COUNTY EMPLOYEES' unconstitutional use of unnecessary, unreasonable and/or excessive force, unlawful searches and seizures, and unlawful harassment, threats, coercion and intimidation to achieve personal goals and ends; and Defendant COUNTY EMPLOYEES' use of police power for personal reasons and goals. (*Id.* at ¶ 59.)

- Defendant COUNTY OF LOS ANGELES through their supervisory employees and agents have and continue to have a mandatory duty of care to properly and adequately hire, train, retrain, supervise and discipline its officers, including Defendant's COUNTY EMPLOYEES, so as to avoid unreasonable risk of harm to its citizens including the deprivation of civil rights. (*Id.* at ¶ 60.)

- Defendant COUNTY OF LOS ANGELES had either actual or constructive knowledge of their deficient policies, practices, customs and usages, particularly when its officers work off-duty in various security positions. As a result of this

8

failure, Defendant COUNTY OF LOS ANGELES ratified its officers' disregard of constitutional and statutory rights as alleged herein. *(Id.* at ¶ 61.)

- The conduct of each of the Defendants was extreme and outrageous with the intention of causing, or the reckless disregard of the probability of causing emotional distress, and as an approximate result of Defendant's conduct, Plaintiff suffered severe emotional distress. *(Id.* at ¶ 66-67.)

- Plaintiff believed that he would be struck about his body and in fact was struck upon by his body by Defendants during the invasion of his home on March 25, 2016. *(Id.* at ¶ 71.)

- Each of the Defendants acted as the agents, servants, employees, employers, principals, and/or representatives of each of the remaining Defendants, and each of them, were acting within the course and scope of this agency, service and employment. *(Id.* at ¶ 22.)

- Each wrongful act alleged in the Complaint was done with the express or implied approval, knowledge and consent, either actual or constructive of all other Defendants and each Defendant ratified and approved the acts and omissions of each of the other Defendants. *(Id.* at ¶ 23.)

- Each of the Defendants acted in concert in furtherance of each other's interests. *(Id.* at ¶ 24.)

///

///

///

9

## III.    THE COMPLAINT PROVIDES DEFENDANT WITH FAIR NOTICE OF THE CLAIM AND THE FACTUAL ALLEGATIONS SHOW A PLAUSIBLE CLAIM FOR RELIEF.

### 1.    Applicable Pleading Standards.

The Federal Rules of Civil Procedure have created a "liberal system of notice pleading" that is applicable to § 1983 claims to the same extent as other claims. (*Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 168 (1993).) Federal courts may not apply a "heightened pleading" standard to the liberal pleading requirements of Rule 8(a) in a civil rights case alleging municipal liability under 42 U.S.C. § 1983. (*Id.* at 164.)

Plaintiff acknowledges that as to all causes of action, he must allege "enough facts to state a claim to relief that is plausible on its face." (*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).) Plaintiff also acknowledges that: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)

However, as long as a plausible claim is pled, the complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" (*Bell Atlantic Corp. v. Twombly, supra*, 550 U.S. at 556.)

Further, *Twombly/Iqbal* did not change the FRCP 8(a)(2) requirement that a statement of the claim be "short and plain." For example, the Ninth Circuit has held that a two-and-a-half-page claim consisting of 17 alleging paragraphs stated "plausible" claims for both employment discrimination under the Age Discrimination in Employment Act and wrongful discharge under Oregon law. (*Sheppard v. David Evans & Assocs.,* 694 F.3d 1045, 1048-1049 (9th Cir. 2012).)

Additionally, appellate courts addressing the issue uniformly agree that *Iqbal/Twombly* does not require plaintiff to plead a prima facie case; "the prima facie model is an evidentiary,

10

not a pleading, standard." (*Rodríguez-Reyes v. Molina-Rodríguez,* 711 F.3d 49, 53(1st Cir. 2013); *Keys v. Humana, Inc.,* 684 F.3d 605, 609-610 (6th Cir. 2012); *Khalik v. United Air Lines,* 671 F.3d 1188, 1191-1192 (10th Cir. 2012); *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010).)

2. **The Conspiracy Allegations Impose Liability Against Defendant For All Causes of Action.**

The County asserts its motion to dismiss should be granted because plaintiff did not allege facts stating a claim for 42 U.S.C. § 1983, Intentional Infliction of Emotional Distress, and Assault and Battery.

Applying the above-referenced pleading standards here, County's motion to dismiss should be denied because Plaintiff has pled facts in sufficient detail to proceed under Fed. Rule Civ. Procedure 12(b)(6). Plaintiff's complaint sufficiently alleges that County acted in concert and agreement with all defendants in a civil conspiracy. (Complaint, ¶¶ 22-24.) In summary, the complaint alleges that the County and the co-defendants committed the following acts: Conspired to maliciously violate plaintiff's Fourth and Fourteenth Amendment rights by illegally, unlawfully, and under color of authority, break into the home (*Id.* at ¶ 38-41); illegally and unlawfully advised the CITY OF MANHATTAN BEACH that Plaintiff would make fake 911 phone calls to them about the break-in (*Id.* at ¶ 35); entered into the home, violating Plaintiff's due process rights armed with weapons, dressed in tactical uniform gear and wearing body cameras (*Id.* at ¶ 36); falsely advised the Manhattan Beach Police Department that Plaintiff was "squatting in the house", that Plaintiff was "inebriated most of the time" and that Plaintiff was "the suspect" (*Id.* at ¶ 37); unlawfully drilled through the lock of Plaintiff's door, intimidating him, harassing him, threatening him, striking him, by failing to follow proper police

procedures and acting in deliberate indifference and conscious disregard for Plaintiff's rights. (*Id.* at ¶¶ 38-48.)

The motion to dismiss completely ignores the civil conspiracy allegations contained in the complaint. Under California law, conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who share with the immediate tortfeasors a common plan and/or design in its perpetration. *Saunders v. Superior Court,* 27 Cal.App.4th 832, 845-846 (1994); *Wyatt v. Union Mortgage Co.*, 24 Cal.3rd 773, 74 (1979). By participating in a civil conspiracy, a co-conspirator adopts as his own the torts of his co-conspirators. (*Id.* at 784.) In this way, a co-conspirator incurs tort liability co-equal with the immediate tortfeasors, regardless of whether he or she actually commits the tort herself. *Ibid.* The complaint alleges the defendants, including employees of the County, acted in concert and in furtherance of each other's interests, conspiring to cause the harm alleged. The conspiracy allegations, when read in conjunction with the factual allegations of each cause of action in the complaint, satisfy the pleading requirements of Federal Rule Civil Procedure 8(a), such that even in instances where specific conduct of the County are not alleged, each cause of action passes the *Twombly/Iqbal* standards, such that the motion should be denied.

3. **The First and Second Causes of Action Under 42 U.S. § 1983 Each State A Cause of Action Against Defendant.**

With respect to the causes of action under 42 U.S.C. § 1983, as against the County of Los Angeles, plaintiff must plead and prove that: 1) County personnel violated plaintiff's constitutional rights while acting under color of state law; and 2) The violation was caused by a policy, practice, or custom of the County. *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 690 (1978).

1
2
3
4
5
6
7
8

Here, defendants, including County, had absolutely no right to engage in forcible entry under cover of night armed with weapons and dressed in tactical gear, illegally break into the sanctity of the home and assault Hutnyan. This constitutes a clear violation of plaintiff's Fourth and Fourteenth Amendment rights as alleged in the complaint. The MSA did not give Cafferata or any of her cohorts the right to enter the premises in this fashion. More precisely, the MSA provides that Hutnyan would allow "Petitioner [Cafferata] with access to the marital residence **upon reasonable notice** from Petitioner [Cafferata]. (See MSA, p.11; emphasis added.)

9
10
11
12
13
14
15
16
17

The following soliloquy from Judge Thomas Trent Lewis at the conclusion of the 4-day the domestic violence/restraining order trial arising out of the conduct alleged in the instant complaint is enlightening: "I have no quarrel with the petitioner's [Cafferata's] lawful right to have entry to the residence **but there's a right way to do it and there's a wrong way to do it.** She certainly had the lawful right to reoccupy the property. There was no order precluding her from doing so, **but the methodology chosen by the petitioner's agent, Chris Herzog, as to how to implement it was completely out of bounds in my view. And that's a charitable characterization.**

18
19
20
21
22

How was it out of bounds? First of all, I don't know who Mr. Herzog thinks he is. I don't know why he dresses the way he does. **But I think it's to intimidate others by creating the impression that he is an off and on-duty officer or that he is possessed of some kind of authority that he is not truly possessed of.**

23

Now has he broken the law? That's not for me to decide.

24
25

Did he file a false police report? I don't need to decide that and I don't decide that.

26
27
28

**Did the other officers act – the off-duty sheriff officers act in an inappropriate manner? I think they did in the following respects: First of all, they were asked to identify the agency that they were members of, and they refused to do that, and I'm making a**

PLAINTIFF'S OPPOSITION TO DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS
COMPLAINT

1
2
3
4
5

**finding that on this record those officers failed to respond to a lawful inquiry concerning the agency to which they were members. Second, there was no reason to go there at 10:30 at night other than to create a bullying atmosphere and intimidation. That's the inference that this court draws."** (See Plaintiff's Request for Judicial Notice, Exhibit "1" at pp. 3-4; emphasis added.)

6
7
8
9
10
11
12
13
14

Thus, the MSA, contrary to the assertions of the County, and for that matter, common sense as well as the law, did not give the defendants, including County, *carte blanche* to show up and invade the home. Defendants' conduct resulted in a 3-year CLETS restraining order issued against Cafferata. (See Plaintiff's Request for Judicial Notice, Exhibit "2.")   Insofar as defendants had no right to enter the home, the § 1983 causes of action are adequately pled. The complaint further alleges that the violation was caused by a policy, practice or custom of the County. (See Complaint, ¶¶ 53, 58-59.)

15
16

To the extent that there is a valid cause of action asserted against Cafferata for this conduct, the complaint is also well pled against the County based on the conspiracy allegations.

17
18
19
20
21
22
23
24
25
26
27

Indeed, the allegations in the first and second causes of action, combined with the conspiracy allegations satisfy the *Twombly/Iqbal* pleading standards. These allegations include sufficient facts to support a plausible legal claim that the acts and conduct of Cafferata, Herzog, the off-duty Los Angeles County Sheriff's Department officers, the other named defendants  and the Manhattan Beach Police officers (who were on duty), acted in concert with each other, were acting under color of authority and under the policies, practices, customs and usages condoned and tolerated of its officers. Plaintiff in this case came face-to-face with the customs and policies of the County that permit police abuses under the Fourth and Fourteenth Amendments, by engaging in the proverbial "code of silence," by claiming that they thought they were going to

28

14

1
2

plaintiff's home for the unbelievable purpose of "eating pizza, "bake cookies," and "play board games." (See Plaintiff's Request for Judicial Notice, Ex. 1, p.5.)

3
4
5

"It is well established that private parties who act in concert with officers of the state are acting under the color of state law within the meaning of § 1983." (*Evans v. McKay*, 869 F.2d 1341, 1348 (9th Cir. 1989).)

6
7
8
9
10
11
12
13
14
15

The off-duty status of the law enforcement defendants is irrelevant to the viability of the complaint. Plaintiff bases defendants' liability on the municipal customs and practices and the conduct of the individual policy makers who are acting under color of law. Cases such as *Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir. 1990) have recognized such a theory. Plaintiff has more than adequately alleged that the municipalities' policies and the actions of its policy makers, acting under color of law, permitting off-duty officers to engage in this type of behavior was foreseeable. Whether plaintiff can establish the requisite causation to a jury, of course, is not ripe for decision.

16
17
18
19
20
21
22
23
24
25
26

The Ninth Circuit has developed factors to determine if an off-duty police officer is acting under color of law. (*Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006). First, the challenged conduct must be performed while the officers acting, purporting, or pretending to act in the performance of his or her official duties. (*McDade v. West*, 223 F.3d, 1135, 1140 (9th Cir. 2000). Second, the officers' pretense of acting in the performance of his duties must have had the purpose or effect of influencing the behavior of others. (*Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839 (9th Cir. 1998). Third, the challenged conduct must be related in some meaningful way to either the officers' governmental status or to the performance of his duties. (*Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995).

27

///

28

///

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14

The facts alleged in the complaint plausibly meet the factors set forth in *Anderson, supra*. First, the officers were purporting to act in the performance of their official duties by breaking into plaintiff's home, intimidating him, threatening him, while armed, wearing tactical uniform gear and body cameras. They (or through their co-conspirators) also alerted the on-duty local police department that they were going to deal with a "suspect." As alleged, it is certainly plausible that they were acting within the performance of their official duties. Unquestionably, the officers' pretense of acting in the performance of their duties, by breaking into the sanctity of plaintiff's home had the purpose or effect of influencing the behavior of plaintiff. Finally, the conduct was in a meaningful way related to their governmental status in performance of their duties as it was condoned by the City of Manhattan Beach Police Department and they were acting within their territorial jurisdiction and directing their actions towards constituents such as plaintiff.

15
16
17
18
19
20
21
22
23
24
25
26
27

Ultimately, the officers' off-duty status does not derail plaintiff's claims. Plaintiff's injuries were allegedly caused by the customs and practices of the County and the actions of supervisors acting under color of law. *Gibson v. City of Chicago*, *supra*, held that a municipal custom and practice was actionable notwithstanding that an off-duty officer inflicted the fatal shot. (See, also *Garcia v. City of Chicago*, 2003 WL 1715621 (N.D. Ill. 2003) (Upholding theory that beating by an off-duty officer resulted from the Department's failure to discipline its officers).) In County's leading cases, *Huffman v. County of Los Angeles*, 147 F.3d 1054 (9th Cir. 1998) and *Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996), the plaintiffs failed, not as a matter of law because an off-duty officer inflicted the harm, but because plaintiffs failed **at trial** (not at a motion to dismiss under FRCP 12(b)(6)), to establish the causal connection between the municipal policies and the off-duty officers' conduct.

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS COMPLAINT**

Finally, the opposition erroneously states that no violation of the Fourth or Fourteenth Amendment has been alleged, and that only the violations of the Fourth Amendment may be properly alleged. To the contrary, the Fourth Amendment guarantees the right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. That is exactly one of Plaintiff's rights violated here. Concurrently, defendants, including County, violated plaintiff's Fourteenth Amendment rights by denying him his liberty and his property, as alleged in the complaint.

### 4. The Complaint States A Claim For Intentional Infliction Of Emotional Distress.

California law recognizes "severe emotional distress means ... emotional distress of substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." The distress may consist of "any highly unpleasant mental reactions such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry." *Fletcher v. Western National Life Insurance Co.*, (1970) 10 Cal.App.3d 376, 397.  Ordinary rude or insulting behavior is not enough to justify an award of damages.  (See, Rest. Second Torts, § 46, Comment D.  ["There is no occasion for the law to intervene in every case where someone's feelings are hurt."]; Comment J [Distress must be so severe that "no reasonable man could be expected to endure it."]; "[A] cause of action is established when it is shown that one, in the absence of any privilege, intentionally subjects another to the mental suffering incident to serious threats to his physical well-being, whether or not the threats are made under such circumstances as to constitute a technical assault." (*State Rubbish Collectors Association v. Siliznoff* (1952) 38 Cal.2d 330, 336.)

1
2
3
4
5
6
7
8

"The extreme and outrageous character of the conduct may arise from the abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. Thus, in an attempt to extort money by a threat of arrest may make the actor liable even with an arrest, or threat alone, would not do so.  In particular, **police officers**, school authorities, landlords, and collecting creditors have been held liable for extreme abuses of their position." (*Newby v. Alto Rivera Apartments* (1976) 60 Cal.App.3d 288, 297 fn. 2; emphasis added.)

9
10
11
12
13
14
15
16
17

The complaint sets forth facts that demonstrate the defendants, including County, who acted in the course and scope of the conspiracy with the other defendants, participated in conduct directed against plaintiff, which they knew would cause him to suffer severe emotional distress by engaging in the egregious conduct of breaking into the home at 10:30 at night, armed with weapons, wearing body cameras and clad in tactical uniform gear, invading the sanctity of his home, searching his home, assaulting and battering him, all of which would result in the average member of a community to arouse his resentment against the actors, and lead him to exclaim "outrageous." (See Rest. Second Torts, § 46, Comment D).

18
19
20
21
22
23
24
25
26
27

The opposition maintains the complaint fails because Cafferata had the right to enter the home. However, neither she, nor any of the defendants was within their rights to invade the home in the manner alleged. It shocks the conscience. Cafferata had the right to engage in civilized behavior, such as arranging a mutually convenient time to come to the home during daylight hours, upon reasonable notice pursuant to the MSA, without the escort of multiple armed off-duty police officers in full tactical gear, and without alerting the Manhattan Beach police that Plaintiff was a "suspect" and "inebriated most of the time." County is equally culpable for this conduct and their participation in these events is particularly shocking.

28

1

### 5. **The Complaint States A Claim For Assault And Battery.**

2

3

4

5

6

7

8

Assault and battery are crimes as well as torts and the statutory definition of the crimes are in the Penal Code: "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Penal Code § 240.) "A battery is any willful and unlawful use of force or violence upon the person of another." (Penal Code § 242.) In tort actions for assault and battery, courts typically assume these Penal Code definitions and related criminal cases apply. (See *Fraguglia v. Sala* (1936) 17 Cal.App.2d 738, 742.)

9

10

11

12

13

14

Here, the conduct alleged in the complaint on its face suffices to plead the elements of the tort of assault. The conduct of County, along with its co-conspirators, breaking into the home as set forth above, ultimately causing plaintiff to retreat into his bedroom in fear of an attack amounts to an assault. Further, the complaint specifically alleges that plaintiff believed that he would be struck about his body. (Complaint, ¶ 71.)

15

16

17

The tort of battery has also been alleged as the complaint states that plaintiff was struck upon his body by defendants, all co-conspirators, during the invasion into his home. *(Id.)* These allegations are sufficient to support the battery cause of action.

18

19

20

21

### IV. **IF THE COURT GRANTS THE MOTION IN ANY PART, THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND.**

22

23

24

25

26

27

28

If the court grants the motion in any part, the Court should grant plaintiff leave to amend. Rule 15(a) of the Federal Rules of Civil Procedure expressly states that leave to amend "shall be freely given when justice so requires." Leave to amend should be denied only if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." (*Schreiber Distributing Co. v. Serv -Well Furniture Co., Inc.* (1986) 806 F.2d 1393, 1401.)

19

**V. CONCLUSION**

Based on the conduct of all defendants including the COUNTY and its agents/employees as alleged in the Complaint, Plaintiff has pled facts sufficient to state a claim to relief that is "plausible" based on the causes of action against defendants for violation of civil rights, intentional infliction of emotional distress, and assault and battery. Therefore, defendant Cafferata's motion to dismiss should be denied, or in the alternative, leave to amend the complaint should be granted.

Dated:    June 19, 2017                 LARRY M. BAKMAN, ESQ.
                                        LAW OFFICES OF GARRY S. MALIN, APC

                                 By  /s/ Garry S. Malin
                                        GARRY S. MALIN
                                        Attorneys for Plaintiff

20

PLAINTIFF'S OPPOSITION TO DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS
COMPLAINT