1   Larry M. Bakman, Esq., SBN: 88964
2   1875 Century Park East, Suite 700
    Los Angeles, California 90067
3   (310) 553-5512; Fax: (844) 272-3958
    Email: lbakman@lbakmanlaw.com
4
5   Garry S. Malin, Esq., SBN: 118002
    2660 Townsgate Road, Suite 600
6   Westlake Village, California 91361
    (805) 496-2244; Fax (805) 497-8856
7   Email: gmalin@malinlaw.com
8   Attorneys for Plaintiff
9
10                  **UNITED STATES DISTRICT COURT**
11                  **CENTRAL DISTRICT OF CALIFORNIA**
12
13  MARK HUTNYAN,                          ) Case No.: 2:17-cv-00545-PSG-ASx
                                           )
14              Plaintiff,                 )
15          v.                             ) **PLAINTIFF'S OPPOSITION TO**
                                           ) **DEFENDANT DIANE CAFFERATA'S**
16  DIANE CAFFERATA HUTNYAN;               ) **SPECIAL MOTION TO STRIKE**
    KRISTIAN HERZOG Also Known As          ) **PURSUANT TO CALIFORNIA CODE OF**
17  KRIS HERZOG, Individually and          ) **CIVIL PROCEDURE § 425.16;**
    Doing Business As THE BODYGUARD        ) **MEMORANDUM OF POINTS AND**
18  GROUP OF BEVERLY HILLS;                ) **AUTHORITIES**
    COUNTY OF LOS ANGELES;                 )
19  RICKY TYSON; EDDIE CARTER;             ) Date:       July 10, 2017
20  GLENN VALVERDE;                        ) Time:       1:30 p.m.
    NICHOLAS JOHNSTON;                     ) Courtroom:  6A
21  GERMAINE MOORE;                        ) Judge:  Hon. Philip S. Gutierrez
    CITY OF MANHATTAN BEACH;               )
22  RYAN SMALL; CHAD SWANSON;              )  [Request for Judicial Notice Filed
23  CHRIS NGUYEN; TERESA MANQUEROS;        ) Concurrently]
    and DOES 1 to 10, Inclusive,           )
24                                         )
25              Defendants.                )
                                           )
26  _____   )
27  //
28

                                          1

1

# TABLE OF CONTENTS

2
**Page**

3

TABLE OF AUTHORITIES............................................ii

4

MEMORANDUM OF POINTS AND AUTHORITIES............................2

5

I.    SUMMARY OF ARGUMENT.......................................2

6

II.   STATEMENT OF FACTS........................................4

7

III.  ARGUMENT.................................................11

8

      A. Cafferata's Motion Does Not Survive the Court's

9         Two-Step Analysis......................................11

10

          1. Step One: Plaintiff's Claim Does Not Arise

11            From Protected Conduct.............................11

12

          2. Step-Two: Plaintiff Has Demonstrated a

13            Probability of Prevailing..........................14

14

      B.  Cafferata's Conduct Is Not Protected by

15        The Litigation Privilege..............................14

16

IV. CONCLUSION................................................15

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DIANA CAFFERATA'S SPECIAL MOTION TO STRIKE

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

Baral v. Schnitt
1 Cal.5th 376, 388 (August 1, 2016)...............................12

E.G. Robles v. Chalilpoyil
181 Cal.App.4th 566, 582 (2010)..................................14

Equilon Enterprises, LLC v. Consumer Cause, Inc.
(2002) 29 Cal.4th 53.............................................11

Fielder v. Sterling Park Homeowners Ass'n
914 F.Supp.2d 1222, 1232 (W.D. Wash. 2012)......................13

Flatley v. Mauro
39 Cal.4th 299, 320 (2006)...................................3, 13

Kimes v. Stone
84 F.3d 1121 (9th Cir. 1996).....................................15

Kupiec v. American Int'l. Adjustment Co.
235 Cal.App.3d 1326 (1991).......................................15

Martinez v. Metabolife Int'l, Inc.
(2003) 113 Cal.App.4th 181, 185..................................11

Navellier v. Sletten
29 Cal.4th 82, 89, 93 (2002).....................................14

Scott v. Metabolife Intern., Inc.
(2004) 115 Cal.App.4th 404, 414..................................11

Silberg v. Anderson
50 Cal.3d 205, 212 (1990)........................................14

Sterling Park Homeowners Ass'n.
914 F.Supp.2d 1222, 1232 (W.D. Wash 2012)......................13


Statutory Authority                                                      Page(s)

Federal Rule Of Civil Procedure 12(b)(6)......................14

42 U.S.C. § 1983..........................................8, 12, 14

Civil Code § 47 subdivision (b)(2)............................14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutory Authority**                                                **Page(s)**

**Code of Civil Procedure** § **425.16**...........................2, 11

**Code of Civil Procedure** § **425.16(e)**......................11, 12

**PLAINTIFF'S OPPOSITION TO DIANA CAFFERATA'S SPECIAL MOTION TO STRIKE**

**TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

COMES NOW plaintiff Mark Hutnyan ("Hutnyan"), who hereby submits the following opposition to defendant Diane Cafferata's ("Cafferata") [1] notice of motion and special motion to strike pursuant to California Code of Civil Procedure § 425.16 as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    SUMMARY OF ARGUMENT**

Cafferata seeks to turn the anti-SLAPP law on its head.  Contrary to the position taken in the motion, Cafferata was not contacting the authorities to seek help, but to allow her and her co-conspirators to engage in the wrongful conduct alleged in the complaint.

Based on the preposterous fallacy that Cafferata was entitled to enter what had been previously the family home ("the home") solely occupied by Hutnyan under any circumstances because of their Marital Settlement Agreement ("MSA"), Cafferata attempts to defend her wrongful conduct, asserting that she merely sought to "safely transition back into the home." (Motion, p. 1, line 10.)

In fact, the MSA specifically provides that Respondent (Hutnyan) will provide "Petitioner [Cafferata] with access to the marital residence **upon reasonable notice** from Petitioner [Cafferata]. (See MSA, p.11; emphasis added.) The conduct alleged in the complaint hardly constitutes "reasonable notice". Rather, it constitutes extremely reckless and illegal conduct by all defendants who conspired to engage in the wrongful acts with Cafferata. In fact, the conduct by Cafferata and her co-defendants, as alleged in the complaint, ultimately resulted in a CLETS Order against her (See Plaintiff's Request for Judicial Notice, Exhibit "2".)

---

[1] Honorifics will not be used. No disrespect is intended.

**PLAINTIFF'S OPPOSITION TO DEFENDANT DIANE CAFFERATA'S SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**

The reality is that under the guise of a claim of right to possession under the MSA (See Defendant's Request for Judicial Notice), instead of simply contacting Hutnyan and requesting a mutually convenient date and time to come to the home that is the subject of the MSA, Cafferata, along with the co-defendants, consisting primarily of L.A. County Sheriff Department personnel who were armed, dressed in tactical gear, and wearing body cameras, illegally broke into and entered the home under cover of night at 10:30 p.m., while the home was legally occupied by Hutnyan in violation of his civil rights and causing the injuries and damages alleged in the complaint.

Plaintiff's claim is not based on an action involving any protected activity. The principal thrust or gravamen of plaintiff's action is defendants' wrongful, unlawful and reprehensible breaking and entering into the home rightfully occupied by plaintiff. Plaintiff's claims are not based on any action involving public participation and petition. Cafferata's claims are not based solely on her communication with law enforcement. The conduct in the complaint describes unprotected activity. The First Amendment does not protect the outrageous conduct of Cafferata and her co-conspirators, who, as alleged in the complaint, broke into the home rightfully occupied by plaintiff, under cover of night, with off-duty police officers, carrying weapons, wearing tactical gear and body cameras, all conspiring to violate plaintiff's civil rights by engaging in an unreasonable search and seizure and depriving him of his personal liberty and property.

As to the individual paragraphs that Cafferata claims fall within the scope of the anti-SLAPP statute (¶¶ 34-37), the court should never reach this analysis as it must first make a determination that the complaint alleges protected activity. "Unlawful or criminal activities do not qualify as protected speech or petition activities under the anti-SLAPP statute. (*Flatley v.*

3

*Mauro* (2006) 39 Cal.4th 299, 317.)  Here, we are not dealing with a "false police report," but false statements to the police, which were used by Cafferata to engage in her illegal activity.

Additionally, as set forth below, Cafferata's conduct is not privileged because the communications alleged were not made in any judicial or quasi-judicial proceedings, by a litigant or other participant authorized by law, to achieve the objects of litigation that has some connection or logical relation to the action.

## II.   STATEMENT OF FACTS

The following facts relevant to defendant's motion are alleged in plaintiff's complaint:

The following facts relevant to defendant's motion are alleged in plaintiff's complaint:

- On March 25 and March 26, 2016, at Plaintiff's residence in Manhattan Beach (the "home"), Defendants, and each of them, unlawfully and forcefully entered the home without knocking, warning, notice, all in violation of Plaintiff's civil rights under Fourth and Fourteenth Amendments of the United States Constitution and statutory law (Complaint, ¶ 26.)

- On or about March 3, 2015 DIANE CAFFERATA HUTNYAN ("MRS. HUTNYAN") and Plaintiff entered into a Marital Settlement Agreement ("MSA"), wherein Plaintiff was awarded temporary sole possession of the home.  Consistent with this Agreement MS. HUTNYAN vacated the home.  (*Id.* at ¶ 29.)

- While Plaintiff still maintained sole possession of the home, pursuant to the MSA, MRS. HUTNYAN retained the services of Defendants HERZOG, a retired police officer, and THE BODYGUARD GROUP, to enter the home with MRS. HUTNYAN armed with weapons to harass, threaten and intimidate Plaintiff. (*Id.*, ¶ 30.)

PLAINTIFF'S OPPOSITION TO DEFENDANT DIANE CAFFERATA'S SPECIAL MOTION TO STRIKE
PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

- HERZOG employs law enforcement officers, including Los Angeles County Sheriff's Deputies and other employees and agents of the County of Los Angeles, including named Defendants TYSON, CARTER, VALVERDE, JOHNSTON, MOORE (collectively "COUNTY EMPLOYEES"); and these named Defendants were so employed for this so-called assignment on behalf of MRS. HUTNYAN. *(Id.* at ¶ 31.)

- Defendant COUNTY OF LOS ANGELES knew or should have known that its officers, including the Defendant COUNTY EMPLOYEES routinely worked and continue to work off-duty in so-called security positions including their work with Defendant HERZOG and THE BODYGUARD GROUP. *(Id.* at ¶ 32.)

- On or about March 23, 2016, the Defendants notified the CITY OF MANHATTAN BEACH, through the Manhattan Beach Police Department in writing by email that Defendants HERZOG and the COUNTY EMPLOYEES intended to enter the home with MRS. HUTNYAN armed with weapons and wearing body cameras. (Id. at ¶ 34.)

- On the same date, Defendants HERZOG and/or the COUNTY EMPLOYEES advised the CITY OF MANHATTAN BEACH through the Manhattan Beach Police Department in writing by email that Plaintiff would make a "fake" 911 call to Defendant Manhattan Beach Police Department when Defendants HERZOG, the COUNTY EMPLOYEES and MRS. HUTNYAN entered the home. *(Id.* at ¶ 35.)

- On the same date, Defendants HERZOG and/or COUNTY EMPLOYEES advised the CITY OF MANHATTAN BEACH by a telephone call with Defendant RYAN SMALL, Lieutenant with the Manhattan Beach Police Department, that HERZOG

and the COUNTY EMPLOYEES, along with MRS. HUTNYAN intended to enter the home armed with weapons and wearing body cameras. (*Id.* at ¶ 36.)

- On March 25, 2016, HERZOG and/or the COUNTY EMPLOYEES called dispatch of the Manhattan Beach Police Department to inform them that they were either near to, or were already at the home with Defendant MRS. HUTNYAN, they were armed, and they were going to enter the home, by force if necessary, because Plaintiff was "squatting in the house", that MRS. HUTNYAN was the "owner" of the home, and Plaintiff was "inebriated most of the time."   During this conversation Defendants HERZOG and/or COUNTY EMPLOYEES referred to Plaintiff as "the suspect", and referred to MRS. HUTNYAN as "the victim." (*Id.* at ¶ 37.)

- On March 25, 2016, between 10:00 and 10:30 p.m., Defendants HERZOG, the five-armed COUNTY EMPLOYEES clad in tactical uniform gear and wearing body cameras, along with MRS. HUTNYAN unlawfully entered into the home by force, using the services of a locksmith who used a drill or other equipment to force the lock on the front door of the home and break-in the home to gain access, and did thus unlawfully invade and search the home.   Plaintiff was inside the home alone at that time.   Plaintiff was struck on his arm and upon his body during this unlawful break-in and invasion into the home.   Plaintiff did not consent to this invasion into the home. (*Id.* at ¶ 38.)

- During this invasion, Plaintiff was harassed, threatened, intimidated and was told by the Defendants including the COUNTY EMPLOYEES and MRS. HUTNYAN that if he refused to provide them with keys to the home, the hired locksmith would forcibly open all of the other locks to the home. (*Id.* at ¶ 39.)

6

- During this home invasion, all of the Defendants, including the COUNTY EMPLOYEES and MRS. HUTNYAN continually harassed, threatened and intimidated Plaintiff by engaging in various forms of improper conduct and telling him he had to move his cars from the garage. (*Id.* at ¶¶ 40-41.)

- During the home invasion, Plaintiff called 911 and explained in detail to the CITY OF MANHATTAN BEACH through dispatch of the Manhattan Beach Police Department what was happening to him and that he had retreated in fear to his bedroom. (*Id.* at ¶ 42.)

- During the invasion, Defendants SWANSON, NGUYEN and MANQUEROS ("CITY EMPLOYEES"), police officers employed by Defendant CITY OF MANHATTAN BEACH through the Manhattan Beach Police Department, arrived at the home, but rather than impartially investigate the incident, the CITY EMPLOYEES failed to follow proper City of Manhattan Beach Police Department procedures in the investigation before, during and after this home invasion occurred. (*Id.* at ¶ 43.)

- Defendant CITY OF MANHATTAN BEACH and the CITY EMPLOYEES through the Manhattan Beach Police Department failed to take any measures to investigate, inquire, access, act upon, intervene or determine the legality or illegality of the home invasion suffered by Plaintiff and failed to follow proper police procedures. (*Id.* at ¶ 44.)

- Due to the harassment, threats and intimidation by all the Defendants, Plaintiff was forced to, and did in fact leave his home that evening out of fear, worry and anxiety, and temporarily resided at a hotel. (*Id.* at ¶ 45.)

7

PLAINTIFF'S OPPOSITION TO DEFENDANT DIANE CAFFERATA'S SPECIAL MOTION TO STRIKE
PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

- In essence, because of the standing of the police officers, Defendants ignored the explanation provided by Plaintiff and instead, chose to and did act illegally. The actions and inactions by Defendants shocked the conscience and demonstrated deliberate indifference and conscious disregard for Plaintiff's life, liberty, well-being and were all in violation of his civil rights. (*Id.* at ¶ 46.)

- Due to the actions and inactions by each of the Defendants, Plaintiff suffered injuries and damages. (*Id.* at ¶ 47.)

- Defendant COUNTY OF LOS ANGELES through the Los Angeles County Sheriff's Department caused Plaintiff's injuries and damages through their policies, practices, customs and/or usages that ratify the abuse and misuse of police power and the use of unnecessary and unreasonable means by Defendants COUNTY EMPLOYEES and CITY EMPLOYEES. (*Id.* at ¶ 48.)

- Each of the Defendants conspired and acted in concert with each of the other Defendants and under color of the authority and pretense of the statutes, ordinances, regulations, customs, or usages, of Defendants COUNTY OF LOS ANGELES and CITY OF MANHATTAN BEACH in authorizing, directing, and/or causing Plaintiff to suffer excessive force in the entering of the home, conducting an unlawful search of the home and Plaintiff's personal property, committing unlawful harassment, threats, course of conduct and intimidation, which was unreasonable and done intentionally, without lawful justification or reason, and was designed to and did cause injury to Plaintiff's rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable search of the home, and of Plaintiff's papers and effects,

8

and the right to be free from use of excessive, unreasonable and unjustified force, and the right to be free from the use of unlawful harassment, threats, course of conduct and intimidation. (*Id.* at ¶ 53.)

- As a proximate result of the conduct of Defendants, Plaintiff suffered serious injuries to his health, strength, including injuries to his body, his nervous system and emotional injuries causing him to incur general and special damages. (*Id.* at ¶ 54.)

- Defendant COUNTY OF LOS ANGELES maintains policies, practices, customs, and usages, that condoned, tolerated, and allowed its officers, including Defendants COUNTY EMPLOYEES to commit and execute the unconstitutional use of unnecessary, unreasonable and/or excessive force, unlawful searches and seizures, unlawful harassment, threats, coercion and intimidation; the culture and promotion of Defendant COUNTY EMPLOYEES' unconstitutional use of unnecessary, unreasonable and/or excessive force, unlawful searches and seizures, and unlawful harassment, threats, coercion and intimidation to achieve personal goals and ends; and Defendant COUNTY EMPLOYEES' use of police power for personal reasons and goals. (*Id.* at ¶ 59.)

- Defendant COUNTY OF LOS ANGELES through their supervisory employees and agents have and continue to have a mandatory duty of care to properly and adequately hire, train, retrain, supervise and discipline its officers, including Defendant's COUNTY EMPLOYEES, so as to avoid unreasonable risk of harm to its citizens including the deprivation of civil rights. (*Id.* at ¶ 60.)

- Defendant COUNTY OF LOS ANGELES had either actual or constructive knowledge of their deficient policies, practices, customs and usages, particularly

9

when its officers work off-duty in various security positions.  As a result of this failure, Defendant COUNTY OF LOS ANGELES ratified its officers' disregard of constitutional and statutory rights as alleged herein. *(Id.* at ¶ 61.)

- The conduct of each of the Defendants was extreme and outrageous with the intention of causing, or the reckless disregard of the probability of causing emotional distress, and as an approximate result of Defendant's conduct, Plaintiff suffered severe emotional distress. (*Id.* at ¶ 66-67.)

- Plaintiff believed that he would be struck about his body and in fact was struck upon by his body by Defendants during the invasion of his home on March 25, 2016. *(Id.* at ¶ 71.)

- Each of the Defendants acted as the agents, servants, employees, employers, principals, and/or representatives of each of the remaining Defendants, and each of them, were acting within the course and scope of this agency, service and employment. (*Id.* at ¶ 22.)

- Each wrongful act alleged in the Complaint was done with the express or implied approval, knowledge and consent, either actual or constructive of all other Defendants and each Defendant ratified and approved the acts and omissions of each of the other Defendants. (*Id.* at ¶ 23.)

- Each of the Defendants acted in concert in furtherance of each other's interests. (*Id.* at ¶ 24.)

///

///

///

PLAINTIFF'S OPPOSITION TO DEFENDANT DIANE CAFFERATA'S SPECIAL MOTION TO STRIKE
PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

## III.   ARGUMENT.

### A.   Cafferata's Motion Does Not Survive The Court's Two-Step Analysis.

In a motion to strike under Code of Civil Procedure § 425.16, the court engages in a two-part analysis: (1) the court decides whether defendant has made a threshold showing that the challenged cause of action arises from a protected activity; and (2) if such a showing has been made, the burden shifts to plaintiff to demonstrate a probability of prevailing on the merits of his or her claims. (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53.) The purpose of this statute is to respond to lawsuits that chill citizens from exercising their political rights to free speech and activities.

"The critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." (*Scott v. Metabolife Intern., Inc.* (2004) 115 Cal.App.4th 404, 414.) Whether the anti-SLAPP statute applies is determined by the "principal thrust" or "gravamen" of the claim and therefore the statute cannot be invoked for allegations of protected activity that are only incidental to a cause of action based on unprotected activity. (*Martinez v. Metabolife Int'l, Inc.* (2003) 113 Cal.App.4th 181, 185.)

### 1.   Step One:  Plaintiff's Claim Does Not Arise From Protected Conduct.

Defendant has the initial burden to make a prima facie showing that plaintiff's complaint "arises from" defendant's constitutionally-protected free speech or petition activity as defined in § 425.16(e). (*Equilon Enterprises, LLC, supra* at 61.)

Here, the gravamen or thrust of Plaintiff's complaint has absolutely nothing to do with a person's right of petition or free speech under the United States or California Constitutions. The gravamen of Plaintiff's complaint is that under the guise of the MSA, instead of simply contacting Hutnyan and requesting a mutually convenient date and time to come to the home that

11

is the subject of the MSA, Cafferata, along with the co-defendant conspirators, consisting primarily of L.A. County Sheriff Department personnel who were armed, dressed in tactical gear, and wearing body cameras, illegally broke into and entered the home under cover of night at 10:30 p.m. while it was legally occupied by Hutnyan in violation of his civil rights, including 42 U.S.C. § 1983, committed acts warranting a claim for intentional infliction of emotional distress, and also engaged in the torts of assault and battery upon Hutnyan. This is not protected activity under the anti-SLAPP statute.

Cafferata relies on a recent case, *Baral v. Schnitt* (August 1, 2016) 1 Cal.5th 376, 388, in support of her claim that the anti-SLAPP statute permits the striking of portions of a complaint. However, Cafferata's reliance on *Baral v. Schnitt* is wholly misplaced. That case concerns pleadings that include a mix of protected activity with unprotected activity. Here, there is no protected activity alleged at all. The complaint is predicated solely on the unlawful entry into the home and the misconduct that occurred there.

Cafferata references her communications to the City of Manhattan Beach Police Department and points to these as "protected activity." However, her communications were not, as suggested by Cafferata, a "police report" or a report of alleged illegal activity. Her statements to the police are not the thrust of the complaint, and were false, merely to serve as a cover or ruse to prevent a proper police response to her wrongful conduct.

Section 425.16(e) defines a person's right of petition or free speech to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral

12

statement or writing made in a place open to the public or in a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The conduct of Cafferata does not fall within this definition. None of her conduct, including the communications alleged in paragraphs 35-37 of the complaint have anything to do with a public issue or an issue of public interest. They related solely to her attempts to obtain "cover" for her illicit activity as described in the complaint.

"[C]ourts evaluating a special motion to strike ... must carefully consider whether the moving party's conduct falls within the 'heartland' of First Amendment activities." (*Fielder v. Sterling Park Homeowners Ass'n*, 914 F.Supp.2d 1222, 1232 (W.D. Wash 2012).)  Here, the conduct alleged in the complaint describes unprotected activity. The First Amendment does not protect the outrageous conduct of Cafferata and her co-conspirators as alleged in the complaint of breaking into the sanctity of the home, under cover of night, with off-duty police officers, carrying weapons, wearing tactical gear and body cameras, and conspiring with their co-conspirators/co-defendants to violate plaintiff's civil rights by engaging in unreasonable search and seizure and depriving him of his personal liberty and property.

Further, speech or petition activity that is "illegal as a matter of law" is not constitutionally protected and defendant therefore cannot use the anti-SLAPP statute to avoid liability.  (*Flatley v. Mauro*, 39 Cal.4[th] 299, 320 (2006).) Here Cafferata's conduct is not protected under the anti-SLAPP statute because her actions and conduct were not constitutionally protected. (*Ibid.*)

///

13

## 2. <u>Step-Two:  Plaintiff Has Demonstrated A Probability of Prevailing</u>.

Since Cafferata has not met her burden in step-one, i.e., showing that her conduct is protected, the court need not proceed to step-two. (See *E.G. Robles v. Chalilpoyil*, 181 Cal.App.4[th] 566, 582 (2010).)   However, if the court is inclined to proceed, plaintiff has demonstrated a probability of prevailing on his claim. To establish a probability of prevailing on the merits, plaintiff must show that the complaint is both legally sufficient and supported by facts sufficient to support a favorable judgment if plaintiff's evidence is credited.  (*Navellier v. Sletten*, 29 Cal.4[th] 82, 89, 93 (2002).)

As set forth in the opposition to Cafferata's motion to dismiss under Federal Rules of Civil Procedure § 12(b)(6), plaintiff has adequately pled causes of action for violation of 42 U.S.C. § 1983, for intentional infliction of emotional distress, and assault and battery.  Plaintiff incorporates the points and authorities submitted in support of its opposition to Cafferata's motion to dismiss as though fully set forth herein, all of which establish the probability that plaintiff will prevail in this action.

## B. <u>Cafferata's Conduct Is Not Protected By The Litigation Privilege</u>.

Cafferata argues that her conduct was privileged. Cafferata's simplified averment that she is entitled to immunity under the litigation privilege ignores the facts alleged in the complaint. Typically, the litigation privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212. Contrary to Cafferata's claim, the litigation privilege does not apply in this case because her liability is based on her outrageous conduct of

14

illegally breaking and entering into the home and conspiring with her co-conspirators/co-defendants to violate plaintiff's civil rights. There is no basis for her claim of litigation privilege.

Additionally, in *Kupiec v. American Int'l. Adjustment Co.* (1991) 235 Cal.App.3d 1326, the court confirmed that "section 47, subdivision (b)(2), applies only to communicative acts and does not privilege tortious courses of conduct." (*Id.* at 1331.) Moreover, the litigation privilege is not a defense to claims for a violation of federal civil rights (*Kimes v. Stone*, 84 F.3d 1121 (9th Cir. 1996)).

## IV.    CONCLUSION.

Plaintiff's claim is not based on an action involving any protected activity. The gravamen of plaintiff's action is defendants' wrongful, unlawful and reprehensible breaking and entering into the home rightfully occupied by plaintiff. Plaintiff's claims are not based on any action involving public participation and petition. Cafferata's allegations are not based solely on her communication with law enforcement. The conduct in the complaint describes unprotected activity. Therefore, based on the foregoing, defendant Cafferata's special motion to strike should be denied.

Dated:    June 19, 2017              LARRY M. BAKMAN, ESQ.
                                     LAW OFFICES OF GARRY S. MALIN, APC


                          By:    /s/ Garry S. Malin_____
                                 GARRY S. MALIN
                                 Attorneys for Plaintiff

**PLAINTIFF'S OPPOSITION TO DEFENDANT DIANE CAFFERATA'S SPECIAL MOTION TO STRIKE
PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**